# Kerr *v.* Nicholas.

*Statutory Action in nature of Ejectment.*

1. *Adverse possession; exclusiveness of.*—Adverse possession is necessarily exclusive, and it can not exist between two persons, each of whom is in possession under claim of ownership.

2. *Actual possession of part, as constructive possession of 'entire tract.* When a small tract of land, consisting of four or five acres, is subdivided into several lots, which, though separated by partition fences, are all inclosed by a common fence, and subject to a common use, actual possession of the lot on which the dwelling-house is situated, may operate as constructive possession of the other lots.

3. *Statutory suggestion of adverse possession and erection of permanent improvements; proof of value of land.*—In ejectment, or the statutory action in the the nature thereof, when the defendant makes a suggestion of adverse possession for three years, and the erection of permanent improvements on the land (Code, §§ 2702-05), the *onus* is on him to prove the value of the improvements, and the value of the land without the improvements; and no proof of these facts being offered by him, the court may instruct the jury to disregard the suggestion.

4. *Same; setting off value of improvements against rents.*—At common law, independent of statutory provisions, a defendant in ejectment might set off the value of permanent improvements' erected by him, against his liability for rents, or mesne profits, to the full value thereof; and this defense may be made in connection with the statutory suggestion, and may be established though the latter fail.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by Adrian Nicholas and others, children and heirs at law of E. A. Nicholas, deceased, to recover the possession of a small tract of land, particularly described in the complaint, with damages, or mesne profits; and was commenced on the 13th October, 1887. Mrs. Camilla Kerr was made a defendant in her own right, as landlord of the tenants in possession, pleaded not guilty, and made the statutory suggestion of adverse possession for three years, with the erection of valuable improvements; on which issue was joined. The tract of land sued for contained about two-thirds of an acre, being 165 feet east and west, by 210 north and south; and it was the extreme western part of a tract which contained about five acres, being 964 feet east and west, by 210 feet north and south. This tract of land had been subdivided into several small lots, on one of which, called the "Bee Gum Lot," a dwelling-house was erected,

[Kerr v. Nicholas.]

occupied by Lucy Joseph; but that lot is not involved in this suit.

"On the trial," as the bill of exceptions states, "the plaintiffs offered evidence tending to show that their father, E. A. Nicholas, claimed to have bought, twenty-four or five years ago, the tract of land shown by the map marked *Exhibit A*, from Pierre Juzan, the father of Jeff. Juzan, and built a house on the lot marked *Bee Gum Lot*, inclosed the entire tract, immediately moved into the house with his lawful wife, plaintiffs' mother, and there lived with his family for about two years, when one Mary Ward, the sister of Camilla Kerr, moved upon the property, and lived in the house with said E. A. Nicholas and family in the capacity of a servant; that plaintiffs' mother, being unable to live agreeably in the house with said Mary Ward, moved away, and resided in Mobile with some of her children, until shortly before the death of said Nicholas, who continued to live upon the property, claiming it as his own, until his death on August 28th, 1885; that Mary Ward also continued to live upon the property, and in the same house with said Nicholas, sleeping in the same bed with him as his wife, down to the time of her death; that some of the plaintiffs, as the children of said Nicholas, lived on the *Bee Gum Lot* with him, from time to time, during the entire period he resided there; that others of them used and occupied, for a number of years, a house which he had built on Lot No. 3," east of the *Bee Gum Lot*, "under permission from their father, said E. A. Nicholas; also, that said Nicholas claimed title to the land sued for, under a deed to him from one B. Barnode, dated June 30th, 1869, and another portion of the tract shown by the map under a deed from one Jeff. Juzan." The tract conveyed by Barnode was described in his conveyance as " a place known as the *White House*, containing about one acre, more or less;" and the bill of exceptions states, said deed "was admitted in evidence as color of title only."

The plaintiffs introduced evidence, also, "tending to show that the tract of land shown by said map was known as the *White House Tract ;* that said Nicholas always claimed the entire property shown by the map, built the several houses shown on the map, paid taxes on the property in his own name, held himself out as the owner, and was generally known as the owner of the entire tract; that, while he lived on the *Bee Gum Lot*, he used the lot numbered 5 on the map as a part of the premises, and dur-

ing a part of the time, cultivated the lot now sued for as a garden; that he so continued to live upon said property, claiming and controlling it, until his death; that some of the plaintiffs, and their mother, were also residing on said lot with him at the time of his death; also, that Andrew Kerr, the husband of Mrs. Camilla Kerr, purchased from said Nicholas a part of said tract of land, marked on the map as Lot No. 3; that said Nicholas left surviving him, by his lawful wife, twelve children, the youngest of whom is four years of age; that Camilla Kerr took possession of said property away from the plaintiffs, after the death of said Nicholas; that the rental value of the property sued for was $2.50 per month; and that Susan E. Ward, also called Susan E. Nichols, never at any time lived on any portion of said tract of land."

"The defendant offered evidence tending to show that she was a sister of Mary Ward and Susan E. Nichols; that they moved from Montgomery, Alabama, to Mobile, in 1866, the said Susan E. then having $2,500 in money; that she had met said E. A. Nicholas, who then called himself Nichols, in Montgomery, and they claimed to have been married to each other, though said Nicholas then had another wife living, from whom he had not been divorced, and who was plaintiffs' mother; that they immediately moved upon said property shown by the map, and lived there two or three months, when said Susan E. died, leaving a child called *Mollie;* that Mary Ward then moved on the place, supposing that she was the sister-in-law of said Nicholas, and the aunt of Mollie, and to care for Mollie; that at that time all the tract was inclosed by a fence, except" the portion east of the *Bee Gum Lot,* "and that was being cleared for the purpose of fencing and cultivation; that she remained upon the property until her death, which occurred just prior to the death of said Nicholas; that during this entire time she claimed and controlled the entire property, and used and managed it as she saw fit; that she kept a boarding-house on the *Bee Gum Lot,* and received the board paid; that she continued to live upon and occupied all of the lands until the death of said Mollie, which occurred on the 19th January, 1882; that she, during this entire time, cultivated portions of the property, made improvements on other portions, hired and paid for the labor and materials, personally rented out the property to tenants, and collected and used the rents; that she and Mary Ward were the next of kin of said Mollie Nichols, and verbally divided the property between them, by an east

[Kerr v. Nicholas ]

and west line, after her death; that she married Andrew Kerr in 1882, and moved upon the property; that she and Mary Ward continued to hold the property in the same manner until the death of said Mary in 1884; that said Nicholas, during the time Mary Ward was so living on and using the property, spent a portion of his time on the premises known as the *Bee Gum Lot*, and treated it as his home, but was out fishing and hunting most of the time; that he came to town on errands, made purchases for and in the name of said Mary Ward, paid bills, and performed other like services for her; that he paid some of the taxes on the property, but with money furnished by said Mary for the purpose; that he did not sleep in the same room with her, nor hold any other improper relations with her; that defendant remained on the property after the death of said Mary, claimed the whole tract, used and controlled it, but gave said Nicholas special permission to live on the *Bee Gum Lot*, she retaining the possession and control of the residue of the tract, including the parcel now sued for, claiming all of it as her own, and residing on the north-east portion marked Lot No. 3; that her husband, A. M. Kerr, in the summer of 1884, built the house now standing on said lot, and made other improvements thereon; that the value of said house was $140; that said A. M. Kerr rented out said lot and improvements, for her, his wife, and collected and used the rents; that said Nicholas, during his life-time, never objected to this, nor questioned the right of said Kerr to so use the lot; and that the land had little or no rental value without such improvements."

The bill of exceptions adds: "There was no evidence offered by either party, of the value of the land sued for."

The court charged the jury, "among other things," (1) "that under defendant's suggestion of adverse possession for three years, the burden of proving the value of the land sued for, not including the permanent improvements made by the defendant, or those whose estate she holds, is on the defendant;" (2) "that no evidence has been offered as to such value, and the jury must disregard the claim for permanent improvements, and all evidence relating thereto." The defendant excepted to each of these charges, and requested the following charges in writing, duly excepting to the refusal of each: (1.) "The fact that E. A. Nicholas lived on what is called the *Bee Gum Lot* is no evidence of possession by him of the lot now sued for, if each of them is under separate in-

closure." (2.) "The jury are the judges as to whether or not the possession of Mary Ward was, under the circumstances, under claim of adverse possession."

The charges given, and the refusal of the charges asked, are now assigned as error.

T. A. HAMILTON, and S. P. GAILLARD, for appellant, cited *Hollinger v. Smith*, 4 Ala. 370; *Jackson v. Loomis*, 4 Cowen, 168; Tyler on Ejectment, 848; 21 Ala. 151; 13 Ala. 42; 3 Yerger, 435; 29 Ala. 342.

GREG. L. & H. T. SMITH, *contra*, cited *Pickett v. Pope*, 74 Ala. 122; Tied. Real Property, § 698; *Coltart v. Moore*, 79 Ala. 361; *Hairston v. Dubose*, 80 Ala. 589.

MCCLELLAN, J.—We are unable to find in this record any evidence of *exclusive* possession of the land sued for in the appellants, or in those under whom they claim, prior to the death of Mary Ward, which occurred some time during the year 1884. On the contrary, it is shown that, up to that time, the possession, whether sole or joint is immaterial, was in the ancestor of the plaintiffs below. There is some evidence that, subsequent to this event, E. A. Nicholas, through whom plaintiffs claim, while he continued to live on the premises, did so by the special permission, and in recognition of the claim of Camilla Kerr, in such sort as that her possession might have been adverse. There are, also, some facts shown to have been in evidence, from which the jury might have inferred that Mary Ward died more than three years before October, 1887, when this suit was instituted; and hence have concluded that appellants' possession had been adverse for that length of time. It results from this state of the testimony, that the defense of ten years adverse possession, relied on in the court below, utterly failed, and if error was committed in the rulings of the presiding judge on that part of the case, they were without injury to the defendants, and can avail nothing on this appeal.—Tiedeman on Real Prop. 698; *Pickett v. Pope*, 74 Ala. 122.

We are not, however, to be understood as intimating, that the action of the court in refusing to give the charges requested by the defendants, to the effect (1) that the fact that E. A. Nicholas lived on a certain part or lot of the tract, of which the lot involved was also an integral part, was no evidence of possession by him of the latter parcel; and (2)

[Kerr v Nicholas.]

that the jury were the judges of whether the possession of Mary Ward was, under the circumstances, under claim of adverse possession, was erroneous in either particular, abstractly considered. On the contrary, when reference is had to the testimony which went to show that the whole tract was under a common inclosure, and, although subdivided into several lots, was subject to a common use, the refusal of the court to instruct the jury that evidence of the actual possession of one of these lots was not to be considered in determining whether this possession extended to the whole tract, was entirely proper; and the refusal to charge as requested concerning the possession of Mary Ward was justified, for the reason, among others, that the instruction assumed that her possession had been proved, when in point of fact the testimony of the plaintiffs tended to show that she never had possession, adverse or otherwise, but was on the premises only as the servant or mistress of Nicholas. *David v. Malone*, 48 Ala. 428; *Henderson v. Marx*, 57 Ala. 164.

The issue presented by the plaintiffs involved no inquiry as to the value of the land, either with or without permanent improvements. This inquiry was injected into the case, and made material, by defendant's suggestion of three years adverse possession and permanent improvements. Upon proof of this suggestion depended certain statutory rights of the defendants, the character and extent of which were to be determined by a consideration of the values, respectively, of the rents, the permanent improvements, and the land without the improvements.—Code, §§ 2702–2705. Proof of no one of these matters, except the first, was essential to any right asserted by the plaintiffs, but each of them was a material element of the defendant's right to the statutory judgment which the suggestion invoked.—*Coltart v. Moore*, 79 Ala. 361.

The suggestion constituted a special defense, in the nature of a cross action for the value of permanent improvements, and the *onus* was upon the defendants to prove every fact necessary to support their claim. The value of the land without the improvements was such a fact. No proof of it was offered. The suggestion, therefore, was unsupported in a vital particular, and the direction to the jury to disregard it was free from error.

It is insisted, however, that at common law, and irrespective of the statutory suggestion of three years adverse possession, defendants were entitled to set off the value of

[Kerr v. Nicholas.]

permanent improvements made by them, against the rents, or damages for detention claimed by the plaintiffs, and that the charge of the court denied them this right. The general proposition thus asserted is abundantly sustained by authority, and is admitted in argument.—*Gordon v. Tweedy*, 74 Ala. 232; *Hollinger v. Smith*, 4 Ala. 691; *Louquest v. Ten Eyck*, 40 Iowa, 213; *Malcolm v. Rowe*, 39 Ga. 328; *Learned v. Corley*, 43 Miss. 687. But it is contended for appellee, that this right is inconsistent and incompatible with the suggestion of three years adverse possession and permanent improvements, and hence could not be pleaded with it, and, whether specially pleaded or not, could not be relied on in connection with the statutory suggestion. We do not think this position is sound. We are unable to see any repugnance between a claim to have the value of the improvements paid out of the rents, and, if it exceeds the rents, out of the land itself, in the manner pointed out by the statute, and a claim to have the rents only applied in compensation for the improvements. In the one case, the claim is for full compensation for the improvements. In the other, it may or may not be for full compensation, as the rental value of the land may or may not equal the value of the improvements. And in either case, the effort, so far as the rent is concerned, is the same—to reduce plaintiff's recovery in that behalf, to the extent of the improvements defendant has erected on his land, and which will enure to his benefit. Under the suggestion, the rents primarily are to be applied in liquidation of defendants' claim, and the land itself only in case the value of the improvements exceeds the value of use and occupation. Under the common-law principle invoked, the rents alone can be applied to the satisfaction of the claim for improvements. So far as the application of the mesne profits is concerned, therefore, it is clear that the right asserted under each defense, instead of being repugnant, is identical the one with the other. It is equally clear, that there can be no inconsistency between the common-law right to set off improvements against mesne profits, and the statutory claim to have the excess of the value of the improvements over such profits charged upon the land, since this is a matter in no wise involved in or affected by the assertion of the common-law right.

The cases of *Turnipseed v. Fitzpatrick*, 75 Ala. 297; *Hairston v. Dobbs*, 89 Ala. 589, and *Dobbs v. Hairston, Ib.* 594, are not in point. They relate solely to the right given

[Foy v. Cochran.]

by sections 2702 and 2706, respectively, of the Code, and have no bearing whatever on the common-law doctrine we are considering. The two statutory rights referred to are manifestly incompatible. It were patently inconsistent for a defendant to set off the value of his permanent improvements against the claim for the value of use and occupation, and to have any excess of the former over the latter claim charged upon the land; and at the same time reduce the claim for rent, and thus increase the sum to be paid out of the land, by limiting his mesne profits to one year, by reason of the colorable right and good faith which characterizes his possession. To allow this to be done, would be to award full compensation for all improvements erected before suit brought, without any correlative compensation to the plaintiff for the use of his lands, except for one of, at least, three years; and to subvert the purpose of the statute, which was to secure to the plaintiff full damages for the disseizin of his land, and to the defendant full recompense for the improvements he had put upon it. No such inconsistency exists between the right given by sections 2702 *et seq.* of the Code and the common-law right, and no such evil and subversive consequences can flow from permitting a defendant, who held in good faith under claim or color of title, to assert and rely on both defenses. The charges denied the appellants the benefit of both defenses. As to the statutory defense, the instructions, as we have seen, were correct. As to the other, they were erroneous.

The judgment is reversed, and the cause remanded.