577 So.2d 865 (1991)
Annie Nell MANNING
v.
Oscar L. WINGO, et al.
89-997.
Supreme Court of Alabama.
March 15, 1991.
*866 Edward W. Drinkard, Prattville, for appellant.
Clifford W. Cleveland of Cleveland & Colley, Prattville, for appellees.
STEAGALL, Justice.
This appeal is from a final judgment entered in a proceeding for the sale of real property for division.
The property in question was the marital residence of Annie Nell Manning and Robert M. Manning. They were divorced on April 19, 1979. In their divorce judgment, the trial court reserved any determination on the question of real estate owned by the Mannings. Robert Manning died in 1980. At the time of his death, he and Annie Nell Manning each owned an undivided one-half interest in the property. The Mannings had one child.
After Robert Manning's death, two purported wills were offered for probate. The first, dated June 6, 1979, named Hobson L. Nelson as the "administrator" of Robert Manning's estate. It was never admitted to probate. The second, dated July 7, 1979, contained no provision for the appointment of an executor. The second will became the subject of a will contest proceeding that was removed to circuit court. Under both wills, Robert Manning devised $1.00 to his son, Milton Manning, and the remainder of his estate to his brother, Clinton H. Manning. On May 8, 1981, while the will contest proceeding was pending, Clinton H. Manning purported to convey by warranty deed the former marital residence of Robert and Annie Nell Manning to Oscar L. Wingo and Myrtis M. Wingo.
On August 9, 1983, Judge Joe Macon, pursuant to a settlement, entered a consent judgment in the will contest proceeding; that judgment, however, did not deal with the former marital residence. On March 12, 1986, Judge Macon set aside the consent judgment pursuant to Rule 60(b), A.R. Civ.P. In his Rule 60(b) order, Judge Macon awarded Robert Manning's interest in the marital residence to Annie Nell Manning, subject to any rights the Wingos "may establish as bona fide holders [sic] for value." Pursuant to the Rule 60(b) order, Robert Manning's interest in the marital residence was conveyed to Annie Nell Manning by Fred Posey, as circuit clerk of Autauga County.
*867 On March 7, 1985, Annie Nell Manning brought an action seeking the sale of the marital residence for a division of the proceeds; she named the Wingos and the estate of Robert M. Manning as defendants.[1] In her complaint, Annie Nell Manning alleged that she was the owner of an undivided one-half interest in the property and asked the court to declare whether the Wingos or the Manning estate was the owner of the other undivided one-half interest. She amended her complaint on November 6, 1986, as a result of Judge Macon's March 12, 1986, final order setting aside the consent judgment in the will contest proceeding. She amended her complaint by striking the Manning estate as a defendant and by adding a challenge to the validity of the May 8, 1981, conveyance of the property to the Wingos by Clinton H. Manning.
On February 26, 1990, Judge John B. Bush entered a judgment in the sale-for-division case, setting aside Judge Macon's Rule 60(b) order and holding that the Wingos had been bona fide purchasers for value as to Robert Manning's one-half undivided interest. In his judgment, Judge Bush wrote:
"[The] value of the property at the time the Wingos purchased their one-half interest in it was five thousand dollars ($5,000.00). Therefore, Annie Nell Manning's one-half undivided interest in the property is twenty-five hundred dollars ($2,500.00). If this Court were to set a value as to the property and improvements as they currently exist, a great injustice would be done and Annie Nell Manning would be unjustly enriched."
Judge Bush ordered the Wingos to pay $2,500 to Annie Nell Manning for her undivided interest in the property.

I
Annie Nell Manning first argues that Judge Bush erred in setting aside Judge Macon's Rule 60(b) order in the will contest proceeding. "It is well settled in Alabama that the judgment of a court that has jurisdiction of the subject matter and the parties and possesses the power to render the particular judgment is immune from collateral attack." Greene v. Thompson, 554 So.2d 376, 380 (Ala.1989) (citations omitted). "[A] collateral attack on a judgment is an attack made by or in an action or proceeding that has an independent purpose other than impeaching or overturning the judgment." Black's Law Dictionary 237 (5th ed.1979). A judgment is subject to collateral attack for lack of jurisdiction if a jurisdictional defect is apparent on the face of the record. Balboa Ins. Co. v. Sippial Elec. Co., 379 So.2d 579 (Ala.1980).
The record reveals that the August 9, 1983, judgment was set aside on March 12, 1986, approximately 2 ½ years after it was entered. The record does not disclose the filing date of the Rule 60(b) motion to set the judgment aside. In his Rule 60(b) order, Judge Macon held that Annie Nell Manning was entitled to relief from the prior judgment under Rule 60(b)(3) and (5), and held that Annie Nell Manning was entitled to Robert Manning's one-half interest in the marital residence, which was excluded from the 1983 settlement because of misrepresentation. There was no appeal from that Rule 60(b) order. Judge Bush set aside that order on the ground that the Rule 60(b) motion had been untimely and, therefore, that Judge Macon had been without jurisdiction to rule on it. He also held that the Wingos should have been notified of the filing of the motion and should have been made parties to the will contest proceeding.
The only time limitation for a Rule 60(b)(5) motion is that the motion must be brought "within a reasonable time." See Rule 60(b), A.R.Civ.P. Therefore, no jurisdictional defect in the Rule 60(b) motion and order is apparent on the face of the record. We find that this proceeding was tantamount to a collateral attack on Judge Macon's final judgment entered pursuant to the Rule 60(b) motion, and we conclude that because it was within Judge Macon's jurisdiction to rule on the motion, it was *868 error for Judge Bush to set aside that final judgment.

II
Annie Nell Manning's second contention is that the Wingos were not bona fide purchasers for value as to the marital residence. In Rolling "R" Constr., Inc. v. Dodd, 477 So.2d 330 (Ala.1985), this Court stated:
"A bona fide purchaser is one who (1) purchases legal title, (2) in good faith, (3) for adequate consideration, (4) without notice of any claim of interest in the property by any other party. Notice sufficient to preclude a bona fide purchaser may be actual or constructive or may consist of knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party."
477 So.2d at 331-32 (citations omitted).
Oscar Wingo testified that Clinton Manning told him that he (Clinton Manning) owned the property as a result of the will of Robert Manning. Wingo further testified that he was told that Hobson Nelson was the executor of the Manning estate and that no one explained to him that a will had to be admitted to probate.
The Wingos purchased the property from Clinton H. Manning in May 1981. The consent judgment in the will contest proceeding was entered in August 1983. At the time of the conveyance to the Wingos, the property was owned by Annie Nell Manning and the estate of Robert Manning. The deed conveying the property to the Wingos was signed by Clinton H. Manning and by "Hobson C. Nelson as Executor of the Estate of Robert Maddox Manning"; however, only Clinton H. Manning was named as the grantor. Hobson Nelson was never appointed as executor of the Robert Manning estate.
"When a conveyance is subscribed by more than one person and one of the signers' names is not shown in the granting clause or body of the instrument, such conveying instrument is void as to that person." Bank of Gadsden v. Dixie Heating & Cooling Co., 425 So.2d 491, 493 (Ala.Civ.App.1983). We hold, therefore, that even if Hobson L. Nelson had been appointed as executor of the Manning estate, the deed was void as to the estate. Because Clinton H. Manning did not own the property at the time of the conveyance and because the Wingos had constructive notice that he did not own the property, we cannot conclude that the Wingos were bona fide purchasers for value.

III
Annie Nell Manning next contends that the Wingos are not entitled to the value of the improvements they made to the property. Oscar Wingo testified that at the time he and his wife took the deed to the property, the house was in poor condition and that, in his opinion, the property was worth only $4,000 to $5,000 at that time. There was evidence that the Wingos substantially improved the property after taking their deed. Wingo testified that the majority of the improvements came prior to his knowledge of Annie Nell Manning's claimed interest in the property; however, some improvements were made after he knew of her claimed interest.
Oscar Wingo testified that he knew there was a will contest pending, but that he did not learn of Annie Nell Manning's claimed interest in the property until March 7, 1985, when he was served with the complaint seeking a sale of the property for division. Wingo testified that he believed that he and his wife owned the house. He made the back payments on the outstanding mortgage and has continued to make the monthly mortgage payments since taking his deed in 1981. He has paid the back taxes, has had the property assessed in his name for tax purposes, and has paid the taxes on the property since 1981. He has never paid rent on the property.
Under the strict rule of common law, one who made improvements upon property that he did not own could not recover for the value of the improvements except to set off the value of the improvements against the profits during occupancy. Kerret v. Nicholas, 88 Ala. 346, 6 So. 698 *869 (1889). Several jurisdictions have developed an equitable rule of recovery to alleviate the harsh result of the common law rule. In Somerville v. Jacobs, 153 W.Va. 613, 170 S.E.2d 805 (1969), the Supreme Court of Appeals of West Virginia noted that whether one can recover the value of improvements placed mistakenly upon land owned by another depends upon the circumstances and the equities involved in each particular case. That court stated:
"To prevent such unjust enrichment... and to do equity between the parties, this Court holds that an improver of land owned by another, who through a reasonable mistake of fact and in good faith erects a building entirely upon the land of the owner, with reasonable belief that such land was owned by the improver, is entitled to recover the value of the improvements from the landowner and to a lien upon such property which may be sold to enforce the payment of such lien, or, in the alternative, to purchase the land so improved upon payment to the landowner of the value of the land less the improvements and such landowner, even though free from any inequitable conduct in connection with the construction of the building upon his land, who, however, retains but refuses to pay for the improvements, must, within a reasonable time, either pay the improver the amount by which the value of his land has been improved or convey such land to the improver upon the payment by the improver to the landowner of the value of the land without the improvements."
153 W.Va. at 629, 170 S.E.2d at 813.
Some jurisdictions have allowed recovery for the value of improvements made by persons who in good faith but mistakenly believe that they own the land, even though the true owner has not sought relief or requested a judgment against the improver. See Coos County v. State, 303 Or. 173, 734 P.2d 1348 (1987). Other jurisdictions have allowed recovery for the value of improvements only when the true owner seeks to recover possession or profits and rents. For example, in General Greene Inv. Co. v. Greene, 48 N.C.App. 29, 268 S.E.2d 810 (1980), review denied, 301 N.C. 235, 283 S.E.2d 132 (1980), the Court of Appeals of North Carolina held that the right to recover for improvements is a defensive right that accrues to a party in possession of land under color of title when the true owner seeks to recover possession of the land.
Alabama has limited its equitable rule of recovery to the following situations: (1) where an improver, acting in good faith and under the mistaken belief that he owns the land, makes improvements on the land of another, being induced to do so by "fraud, duress, undue influence, or mistake of such character that he is entitled to restitution," Hewett v. McGaster, 272 Ala. 498, 133 So.2d 189 (1961) (citing earlier cases); (2) where the true owner of land makes a demand for the rents and profits, a bona fide occupant under a claim of title who has made valuable improvements on the land is entitled to compensation by way of set-off against the rents or profits accruing during his occupancy, Gresham v. Ware, 79 Ala. 192 (1885); and (3) where a true owner brings an action to recover possession of land, the defendant may recover for permanent improvements by way of set-off against the value of the use and occupation of the land, upon the defendant's suggestion and proof of adverse possession for three years preceding the complaint, Ala.Code 1975, § 6-6-286. In Gresham v. Ware, supra, this Court held that knowledge of an adverse claim to the title is fatal to the improver's claim for compensation.
The Wingos would not be entitled to recover for the improvements under any of those situations; however, based on the circumstances of this case, and balancing the equities involved under these facts, we hold that the Wingos are entitled to recover the value of their improvements. See Somerville v. Jacobs, supra. We therefore remand this cause to the trial court for a determination of the value of the improvements made before the Wingos were served with Annie Nell Manning's complaint in the sale-for-division action, and we direct the trial court to award to the Wingos *870 the value of the improvements and an equitable lien on the property for the value of the improvements or, alternatively, to order Annie Nell Manning to convey the property to the Wingos upon payment by the Wingos of the value of the land less the value of the improvements they made.

IV
Finally, Annie Nell Manning contends that Judge Bush erred in denying her motion for a partial summary judgment. Because of our resolution of the other issues, however, we need not address that contention.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and MADDOX, KENNEDY and INGRAM, JJ., concur.
ALMON, J., concurs in part and dissents in part.
ALMON, Justice (concurring in part and dissenting in part).
I agree that, from all that appears in the record before us, Judge Macon had jurisdiction over Annie Manning's Rule 60(b), Ala. R.Civ.P., petition. I also agree that, therefore, Judge Bush, although attempting to adjust the equities between the parties, erred in setting aside Judge Macon's order and judgment, which awarded the property to Mrs. Manning subject to any interest the Wingos might hold as bona fide purchasers for value.
The August 1983 settlement agreement approved by Judge Macon contemplated that Clinton Manning would deed certain properties to Annie Manning in exchange for her deeding other property to him. The one-acre tract at issue here was not included in that settlement agreement, but the transcript of the hearing at that time includes the following statement by Annie's attorney: "[T]here is one acre, 210 by 210, that is referred to that's excluded from this property already by reason of a mortgage foreclosure by a mortgagee.... Hopefully [Milton Manning, the minor son,] might still have an opportunity to redeem it." The action we now have on review was filed on March 7, 1985, partially on the theory that, during proceedings pursuant to the settlement agreement, Annie discovered that Clinton had fraudulently misrepresented that the one-acre parcel had been foreclosed upon but that, in fact, he had purported to convey it to the Wingos.
The record before us indicates that, before Clinton executed any deed pursuant to the settlement agreement, he became incompetent, and that he died in the spring of 1984. Although the motion for relief under Rule 60(b) is not before us, the Wingos assert that it was filed on February 26, 1986. On March 12, 1986, Judge Macon relieved Annie from any duty under the August 1983 settlement to convey property to Clinton Manning and ordered that, as her son Milton Manning was the only heir of both his father Robert Manning and his uncle Clinton Manning, all property that was to have been disposed of in the settlement agreement would be conveyed by a clerk's deed to Annie and Milton Manning. The one acre tract at issue here, and an adjoining 4.4-acre tract that Clinton and Hobson Nelson had similarly purported to convey to the Wingos, were ordered to be conveyed
"subject to the rights, if any, that Oscar L. Wingo and Myrtis M. Wingo or their assigns may establish as bona fide holders for value as grantees of a certain recorded deed ... executed by Hobson Nelson as Executor of the Robert Maddox Manning Estate."
In all these respects, Judge Macon acted properly in granting relief under Rule 60(b)(5).
In her original petition for declaratory relief and sale for division, Annie had asserted that she owned a one-half interest in the subject property by virtue of a 1962 deed to her and Robert Manning and by virtue of a reservation in her divorce judgment as to the title to the real property. She asked the court to declare whether the estate of Robert Manning or the Wingos owned the other one-half interest. On November 6, 1986, she filed an amendment to her petition, asserting that the Wingos were not bona fide purchasers for value *871 and so held no interest in the property, and that the one-half interest owned by the Robert Manning estate had been conveyed to her and Milton pursuant to Judge Macon's March 12, 1986, order. She added a claim for damages for the rental value of the Wingos' use of the property. In addition to defending against her claims, the Wingos counterclaimed for the value of their improvements.
On February 23, 1990, Judge Bush entered an order in this action that included the following:
"This is an action in equity. As such, the court's mission is to attempt to do what is right between the parties. In response to equitable principles this Court finds and Orders as follows:
"1. That Oscar L. and Myrtis Wingo, when they purchased the subject property from the estate from Robert Maddox Manning, were bona fide purchasers for value and therefore have owned a one-half undivided interest in the whole of the following property since they purchased it in May of 1981. [Describing the one-acre parcel at issue.]
"2. That the Circuit Court of Autauga County's 60(b) Judgment In the Matter of the Estate of Robert Maddox Manning, Case No. CV 82-157 dated March 12, 1986, is hereby set aside to the extent that it affects this subject piece of property. This Court finds that the 60(b) motion was not filed in a timely manner and therefore it well appears that the Circuit Court was without jurisdiction to rule on the same. Further, this order substantially affected the rights of the Wingos and since they were known to have a potential interest in the subject property by the plaintiff at the time that the Motion was filed, they should have been notified and should have been added as parties to that proceeding."
I have shown above why I agree with the majority opinion that Judge Bush erred in holding that Judge Macon did not have jurisdiction to rule on the Rule 60(b) motion. I also believe that Judge Bush erred in holding that the Wingos were bona fide holders for value.
"A bona fide purchaser is one who (1) purchases legal title, (2) in good faith, (3) for adequate consideration, (4) without notice of any claim of interest in the property by any other party.... Notice sufficient to preclude a bona fide purchase may be actual or constructive or may consist of knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party....
"....
"A purchaser is chargeable with notice of what appears on the face of the instruments in his or her chain of title."
Rolling "R" Construction, Inc. v. Dodd, 477 So.2d 330, 331-32 (Ala.1985) (citations omitted).
At the time of the deed to the Wingos, the chain of title to this parcel reflected that Robert and Annie Manning were co-owners of the property by a 1962 deed. There was no instrument divesting Annie Manning of her interest. Furthermore, there was no instrument in the chain of title reflecting that Robert Manning's estate had been probated, that Hobson Nelson had been named executor or administrator, or that Clinton Manning had been declared the beneficiary of the estate or devisee under a will. There was evidence that Mr. Wingo attended the 1983 hearing on the settlement agreement at which the property he had purchased was referred to as having been foreclosed upon. He admitted having transported Clinton Manning to a hearing on the will contest, although he said he did not remember the date and did not learn anything about the contest. Because the Wingos had record notice of title contrary to that asserted by their grantor, they could not be bona fide purchasers for value.
The majority opinion proceeds to observe that the Wingos are not in a posture in which parties have traditionally been allowed compensation for the value of improvements, but nevertheless holds that they are entitled to such relief "based on the circumstances of this case and balancing the equities involved under these facts." Perhaps this is based on the idea *872 that Mrs. Manning unreasonably delayed any attempt to redeem the property under her misunderstanding (apparently caused by Clinton's fraud) that the mortgage had been foreclosed. I can see no other basis for holding that, although the Wingos purchased with notice that their grantor did not hold or have authority to convey title and that Mrs. Manning owned an interest, they have an equitable claim. I would hold that the Wingos purchased the property and made improvements to it at their own risk.
Even if I agreed with the majority that the Wingos should be entitled to some relief, I would not hold that the Wingos can obtain the property by payment of the value of the lands less the value of the improvements. Furthermore, under the majority's result, an award of the value of the improvements should be offset by the reasonable rental value of the property during the time the Wingos have held it.
NOTES
[1] J.O. DeVaughn, the tax collector of Autauga County, was also named as a defendant, but no claim was stated against him, and he is not a party to this appeal.