This appeal is from a final judgment entered in a proceeding for the sale of real property for division.
The property in question was the marital residence of Annie Nell Manning and Robert M. Manning. They were divorced on April 19, 1979. In their divorce judgment, the trial court reserved any determination on the question of real estate owned by the Mannings. Robert Manning died in 1980. At the time of his death, he and Annie Nell Manning each owned an undivided one-half interest in the property. The Mannings had one child.
After Robert Manning's death, two purported wills were offered for probate. The first, dated June 6, 1979, named Hobson L. Nelson as the "administrator" of Robert Manning's estate. It was never admitted to probate. The second, dated July 7, 1979, contained no provision for the appointment of an executor. The second will became the subject of a will contest proceeding that was removed to circuit court. Under both wills, Robert Manning devised $1.00 to his son, Milton Manning, and the remainder of his estate to his brother, Clinton H. Manning. On May 8, 1981, while the will contest proceeding was pending, Clinton H. Manning purported to convey by warranty deed the former marital residence of Robert and Annie Nell Manning to Oscar L. Wingo and Myrtis M. Wingo.
On August 9, 1983, Judge Joe Macon, pursuant to a settlement, entered a consent judgment in the will contest proceeding; that judgment, however, did not deal with the former marital residence. On March 12, 1986, Judge Macon set aside the consent judgment pursuant to Rule 60(b), A.R.Civ.P. In his Rule 60(b) order, Judge Macon awarded Robert Manning's interest in the marital residence to Annie Nell Manning, subject to any rights the Wingos "may establish as bona fide holders [sic] for value." Pursuant to the Rule 60(b) order, Robert Manning's interest in the marital residence was conveyed to Annie Nell Manning by Fred Posey, as circuit clerk of Autauga County. *Page 867 
On March 7, 1985, Annie Nell Manning brought an action seeking the sale of the marital residence for a division of the proceeds; she named the Wingos and the estate of Robert M. Manning as defendants.[1] In her complaint, Annie Nell Manning alleged that she was the owner of an undivided one-half interest in the property and asked the court to declare whether the Wingos or the Manning estate was the owner of the other undivided one-half interest. She amended her complaint on November 6, 1986, as a result of Judge Macon's March 12, 1986, final order setting aside the consent judgment in the will contest proceeding. She amended her complaint by striking the Manning estate as a defendant and by adding a challenge to the validity of the May 8, 1981, conveyance of the property to the Wingos by Clinton H. Manning.
On February 26, 1990, Judge John B. Bush entered a judgment in the sale-for-division case, setting aside Judge Macon's Rule 60(b) order and holding that the Wingos had been bona fide purchasers for value as to Robert Manning's one-half undivided interest. In his judgment, Judge Bush wrote:
 "[The] value of the property at the time the Wingos purchased their one-half interest in it was five thousand dollars ($5,000.00). Therefore, Annie Nell Manning's one-half undivided interest in the property is twenty-five hundred dollars ($2,500.00). If this Court were to set a value as to the property and improvements as they currently exist, a great injustice would be done and Annie Nell Manning would be unjustly enriched."
Judge Bush ordered the Wingos to pay $2,500 to Annie Nell Manning for her undivided interest in the property.
 I
Annie Nell Manning first argues that Judge Bush erred in setting aside Judge Macon's Rule 60(b) order in the will contest proceeding. "It is well settled in Alabama that the judgment of a court that has jurisdiction of the subject matter and the parties and possesses the power to render the particular judgment is immune from collateral attack."Greene v. Thompson, 554 So.2d 376, 380 (Ala. 1989) (citations omitted). "[A] collateral attack on a judgment is an attack made by or in an action or proceeding that has an independent purpose other than impeaching or overturning the judgment."Black's Law Dictionary 237 (5th ed. 1979). A judgment is subject to collateral attack for lack of jurisdiction if a jurisdictional defect is apparent on the face of the record.Balboa Ins. Co. v. Sippial Elec. Co., 379 So.2d 579 (Ala. 1980).
The record reveals that the August 9, 1983, judgment was set aside on March 12, 1986, approximately 2 1/2 years after it was entered. The record does not disclose the filing date of the Rule 60(b) motion to set the judgment aside. In his Rule 60(b) order, Judge Macon held that Annie Nell Manning was entitled to relief from the prior judgment under Rule 60(b)(3) and (5), and held that Annie Nell Manning was entitled to Robert Manning's one-half interest in the marital residence, which was excluded from the 1983 settlement because of misrepresentation. There was no appeal from that Rule 60(b) order. Judge Bush set aside that order on the ground that the Rule 60(b) motion had been untimely and, therefore, that Judge Macon had been without jurisdiction to rule on it. He also held that the Wingos should have been notified of the filing of the motion and should have been made parties to the will contest proceeding.
The only time limitation for a Rule 60(b)(5) motion is that the motion must be brought "within a reasonable time." See Rule 60(b), A.R.Civ.P. Therefore, no jurisdictional defect in the Rule 60(b) motion and order is apparent on the face of the record. We find that this proceeding was tantamount to a collateral attack on Judge Macon's final judgment entered pursuant to the Rule 60(b) motion, and we conclude that because it was within Judge Macon's jurisdiction to rule on the motion, it was *Page 868 
error for Judge Bush to set aside that final judgment.
 II
Annie Nell Manning's second contention is that the Wingos were not bona fide purchasers for value as to the marital residence. In Rolling "R" Constr., Inc. v. Dodd, 477 So.2d 330
(Ala. 1985), this Court stated:
 "A bona fide purchaser is one who (1) purchases legal title, (2) in good faith, (3) for adequate consideration, (4) without notice of any claim of interest in the property by any other party. Notice sufficient to preclude a bona fide purchaser may be actual or constructive or may consist of knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party."
477 So.2d at 331-32 (citations omitted).
Oscar Wingo testified that Clinton Manning told him that he (Clinton Manning) owned the property as a result of the will of Robert Manning. Wingo further testified that he was told that Hobson Nelson was the executor of the Manning estate and that no one explained to him that a will had to be admitted to probate.
The Wingos purchased the property from Clinton H. Manning in May 1981. The consent judgment in the will contest proceeding was entered in August 1983. At the time of the conveyance to the Wingos, the property was owned by Annie Nell Manning and the estate of Robert Manning. The deed conveying the property to the Wingos was signed by Clinton H. Manning and by "Hobson C. Nelson as Executor of the Estate of Robert Maddox Manning"; however, only Clinton H. Manning was named as the grantor. Hobson Nelson was never appointed as executor of the Robert Manning estate.
"When a conveyance is subscribed by more than one person and one of the signers' names is not shown in the granting clause or body of the instrument, such conveying instrument is void as to that person." Bank of Gadsden v. Dixie Heating CoolingCo., 425 So.2d 491, 493 (Ala.Civ.App. 1983). We hold, therefore, that even if Hobson L. Nelson had been appointed as executor of the Manning estate, the deed was void as to the estate. Because Clinton H. Manning did not own the property at the time of the conveyance and because the Wingos had constructive notice that he did not own the property, we cannot conclude that the Wingos were bona fide purchasers for value.
 III
Annie Nell Manning next contends that the Wingos are not entitled to the value of the improvements they made to the property. Oscar Wingo testified that at the time he and his wife took the deed to the property, the house was in poor condition and that, in his opinion, the property was worth only $4,000 to $5,000 at that time. There was evidence that the Wingos substantially improved the property after taking their deed. Wingo testified that the majority of the improvements came prior to his knowledge of Annie Nell Manning's claimed interest in the property; however, some improvements were made after he knew of her claimed interest.
Oscar Wingo testified that he knew there was a will contest pending, but that he did not learn of Annie Nell Manning's claimed interest in the property until March 7, 1985, when he was served with the complaint seeking a sale of the property for division. Wingo testified that he believed that he and his wife owned the house. He made the back payments on the outstanding mortgage and has continued to make the monthly mortgage payments since taking his deed in 1981. He has paid the back taxes, has had the property assessed in his name for tax purposes, and has paid the taxes on the property since 1981. He has never paid rent on the property.
Under the strict rule of common law, one who made improvements upon property that he did not own could not recover for the value of the improvements except to set off the value of the improvements against the profits during occupancy.Kerret v. Nicholas, 88 Ala. 346, 6 So. 698 *Page 869 
(1889). Several jurisdictions have developed an equitable rule of recovery to alleviate the harsh result of the common law rule. In Somerville v. Jacobs, 153 W. Va. 613, 170 S.E.2d 805
(1969), the Supreme Court of Appeals of West Virginia noted that whether one can recover the value of improvements placed mistakenly upon land owned by another depends upon the circumstances and the equities involved in each particular case. That court stated:
 "To prevent such unjust enrichment . . . and to do equity between the parties, this Court holds that an improver of land owned by another, who through a reasonable mistake of fact and in good faith erects a building entirely upon the land of the owner, with reasonable belief that such land was owned by the improver, is entitled to recover the value of the improvements from the landowner and to a lien upon such property which may be sold to enforce the payment of such lien, or, in the alternative, to purchase the land so improved upon payment to the landowner of the value of the land less the improvements and such landowner, even though free from any inequitable conduct in connection with the construction of the building upon his land, who, however, retains but refuses to pay for the improvements, must, within a reasonable time, either pay the improver the amount by which the value of his land has been improved or convey such land to the improver upon the payment by the improver to the landowner of the value of the land without the improvements."
153 W. Va. at 629, 170 S.E.2d at 813.
Some jurisdictions have allowed recovery for the value of improvements made by persons who in good faith but mistakenly believe that they own the land, even though the true owner has not sought relief or requested a judgment against the improver. See Coos County v. State, 303 Or. 173, 734 P.2d 1348 (1987). Other jurisdictions have allowed recovery for the value of improvements only when the true owner seeks to recover possession or profits and rents. For example, in General GreeneInv. Co. v. Greene, 48 N.C. App. 29, 268 S.E.2d 810 (1980),review denied, 301 N.C. 235, 283 S.E.2d 132 (1980), the Court of Appeals of North Carolina held that the right to recover for improvements is a defensive right that accrues to a party in possession of land under color of title when the true owner seeks to recover possession of the land.
Alabama has limited its equitable rule of recovery to the following situations: (1) where an improver, acting in good faith and under the mistaken belief that he owns the land, makes improvements on the land of another, being induced to do so by "fraud, duress, undue influence, or mistake of such character that he is entitled to restitution," Hewett v.McGaster, 272 Ala. 498, 133 So.2d 189 (1961) (citing earlier cases); (2) where the true owner of land makes a demand for the rents and profits, a bona fide occupant under a claim of title who has made valuable improvements on the land is entitled to compensation by way of set-off against the rents or profits accruing during his occupancy, Gresham v. Ware, 79 Ala. 192
(1885); and (3) where a true owner brings an action to recover possession of land, the defendant may recover for permanent improvements by way of set-off against the value of the use and occupation of the land, upon the defendant's suggestion and proof of adverse possession for three years preceding the complaint, Ala. Code 1975, § 6-6-286. In Gresham v. Ware, supra, this Court held that knowledge of an adverse claim to the title is fatal to the improver's claim for compensation.
The Wingos would not be entitled to recover for the improvements under any of those situations; however, based on the circumstances of this case, and balancing the equities involved under these facts, we hold that the Wingos are entitled to recover the value of their improvements. SeeSomerville v. Jacobs, supra. We therefore remand this cause to the trial court for a determination of the value of the improvements made before the Wingos were served with Annie Nell Manning's complaint in the sale-for-division action, and we direct the trial court to award to the Wingos *Page 870 
the value of the improvements and an equitable lien on the property for the value of the improvements or, alternatively, to order Annie Nell Manning to convey the property to the Wingos upon payment by the Wingos of the value of the land less the value of the improvements they made.
 IV
Finally, Annie Nell Manning contends that Judge Bush erred in denying her motion for a partial summary judgment. Because of our resolution of the other issues, however, we need not address that contention.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and MADDOX, KENNEDY and INGRAM, JJ., concur.
ALMON, J., concurs in part and dissents in part.
[1] J.O. DeVaughn, the tax collector of Autauga County, was also named as a defendant, but no claim was stated against him, and he is not a party to this appeal.