Rel: May 2, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in Southern Reporter.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

————————————————

### SC-2024-0405

————————————————

### Alan Haag

### v.

### Wilson Properties, LLC, and John Owen Wilson

### Appeal from Dale Circuit Court
### (CV-22-900063)

WISE, Justice.

AFFIRMED. NO OPINION.

See Rule 53(a)(1) and (a)(2)(F), Ala. R. App. P.

Stewart, C.J., and Mitchell and McCool, JJ., concur.

Sellers, J., concurs specially, with opinion.

SELLERS, Justice (concurring specially).

I fully concur with this Court's decision to affirm the Dale Circuit Court's judgment granting an easement to Wilson Properties, LLC, and John Owen Wilson ("the plaintiffs") to approximately .68 acres of land owned by Alan Haag. However, I am concerned that granting an easement may not provide the best long-term solution to the problem presented here. While trial courts have broad discretion in fashioning equitable remedies to achieve a fair outcome in land disputes, an easement, in this case, might not be a wholly adequate solution.

## I.

Haag and Wilson Properties own adjoining tracts of land in Dale County. Haag purchased his 850-acre tract of land in 2005 with his wife. In 2019, following their divorce, she conveyed to him her interest in that property through a quitclaim deed. Wilson Properties, of which Wilson is the sole member and manager, purchased its 76-acre tract of land in 2015. The deeds for both properties contain general legal descriptions of the tracts, and neither deed contains language that suggests that the land had been surveyed by a professional land surveyor. Wilson Properties never surveyed its property before purchasing it, and Wilson did not survey that property before constructing a house on the land. He

instead assumed that a series of red flags tied to trees marked the boundary line between the two properties. Those flags had been placed by the previous owner for tree-clearing purposes and did not relate to the boundary line of the properties. Wilson also did not consult with Haag about the location of the boundary line separating the properties.

Wilson worked in the construction industry and personally began building a house. In 2016, he began excavating dirt to form the basement of that new house. Wilson completed a three-story house in 2019. Over the next few years, he also installed a variety of structures near the house, including a new driveway, a fence post and gate, a water meter, a septic system, a retaining wall, a generator shed, a concrete parking pad, a propane tank, a solar-energy battery, and a side porch.

During that time, Haag was a permanent resident of Fort Myers, Florida, but he would visit his property five to six times per year for hunting and recreational purposes. Haag first noticed Wilson's work on the land when he saw the excavation of the basement in 2016. Although he was aware that the excavation might have been on his side of the property line, he did not voice any concerns to Wilson at that time. Haag visited the construction site multiple times over the next several years.

Even though he and Wilson developed a friendship and socialized together, Haag never brought up a boundary issue or any encroachment problems with Wilson while Wilson was making improvements on the land.

Haag first realized that Wilson had encroached on his property in 2022 when he was using Onx Hunt, a mobile application for hunters that shows boundary lines overlayed onto aerial photographs of the land. Onx Hunt appeared to show that a portion of Wilson's house had been built on Haag's property. After Haag informed him of this, Wilson hired a land surveyor to ascertain the true boundary line of the properties. The survey showed that some of Wilson's improvements had in fact been made on Haag's property.

## II.

In June 2022, Wilson Properties, and Wilson commenced an action in the Dale Circuit Court seeking, among other things, to quiet title to the contested land, a declaration of Wilson Properties' constructive title to the contested land, and a permanent injunction to prevent Haag from disclaiming Wilson Properties' interest in the contested land. In response, Haag filed a counterclaim seeking a judgment declaring that

4

Wilson had no rights to the improvements he had made on the Haag property and a permanent injunction to prevent Wilson from maintaining and building any new improvements on the contested land, and asserting a common-law claim of continuing trespass based on Wilson cutting down Haag's trees.

In March 2024, the circuit court conducted a bench trial. Following the submission of the parties' evidence, including testimony from Wilson's surveyor, the court found that Wilson had encroached on .68 acres of Haag's property. A corner of the house and a smaller structure had been built over the property line onto Haag's property. Because Haag had had notice that Wilson was building on his property and had done nothing about it, the court ruled in favor of the plaintiffs, granting them "a permanent constructive/implied easement as to all existing encroachments." Haag appealed the circuit court's decision.[1]

III.

---

[1]"'"When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error."'" Yeager v. Lucy, 998 So. 2d 460, 462 (Ala. 2008) (quoting Smith v. Muchia, 854 So. 2d 85, 92 (Ala. 2003), quoting in turn Allstate Ins. Co. v. Skelton, 675 So. 2d 377, 379 (Ala. 1996)).

Equitable relief mandates a result that is "consistent with the principles of justice." Dylan Reeves, <u>Tilley's Alabama Equity</u> § 1:1 (6th ed. 2023). An equitable remedy is "an order directing a person to do or not to do a specific act" with the backing of "the coercive power of the court." 1A C.J.S. <u>Actions</u> § 158 (2016). In contrast, a legal remedy generally is an award of monetary damages. <u>Id.</u> In other words, equitable remedies involve the court's requiring a person to do or refrain from doing something, while legal remedies involve a party's receiving monetary compensation.

At the time of our nation's founding, the English legal system had distinct courts that provided legal remedies and separate courts that provided equitable remedies. <u>See</u> <u>Tull v. United States</u>, 481 U.S. 412, 417 (1987). Alabama also historically had a bifurcated system of courts of law and courts of equity up until 1973, when our Unified Judicial System was created. <u>See</u> <u>Ex parte Grimmett</u>, 358 So. 3d 391, 397 (Ala. 2022) (discussing the development of Alabama's Unified Judicial System). Today, our trial courts provide both legal and equitable remedies. Cases involving land usually require equitable remedies because land is nonfungible. <u>See</u> <u>Rose Nulman Park Found. ex rel. Nulman v. Four</u>

6

Twenty Corp., 93 A.3d 25, 29 (R.I. 2014). "If a remedy is not available by action at law, equity will not hesitate, as a general rule, to take cognizance of a suit that seeks protection of property rights." 27A Am. Jur. 2d Equity § 30 (2019) (footnotes omitted).

Equitable actions require the court to carefully consider the facts of the case and whether the requested remedy would lead to an appropriate and just result; equity seeks to promote a sense of fairness and justice that might not otherwise be available at law. "The trial court is authorized in equity proceedings to mold its judgment so as to adjust the equities of all the parties and to meet the obvious necessities of each situation." American Fam. Care, Inc. v. Irwin, 571 So. 2d 1053, 1061 (1990) (citing BBC Inv. Co. v. Ginsberg, 280 Ala. 148, 190 So. 2d 702 (1966)). Our courts have a variety of remedies to choose from to meet the equities of each case, keeping in mind that "[f]lexibility rather than rigidity has distinguished" equity. Hecht Co. v. Bowles, 321 U.S 321, 329 (1944).

When a trial court issues an injunction, it "command[s] the respondent to perform or to abstain from performing a certain specific act." Tilley's Alabama Equity § 3:1. In the context of land disputes,

injunctions are useful "when injuries to realty are permanent, continuous, and of frequent occurrence, tending to 'destroy the substance of the inheritance, or ruin the estate, or permanently impair its future use and enjoyment,'" and when "'pecuniary compensation is inadequate.'" Smith v. Morris, 181 Ala. 279, 280-81, 61 So. 276, 276 (1913) (quoting Hooper v. Dora Coal Min. Co., 95 Ala. 235, 239-40, 10 So. 652, 654 (1892)).

An easement, on the other hand, gives one "the right to use or control the land" of another "for a specific limited purpose." Easement, Black's Law Dictionary 642 (12th ed. 2024); see also Helms v. Tullis, 398 So. 2d 253, 255 (Ala. 1981) (discussing the different types of easements and how they are created). Here, the parties sought injunctions, and, in fashioning a remedy, the trial court granted an easement. An injunction and an easement are both types of equitable remedies that could suffice to provide needed relief in a land-dispute case. But here, because there is a permanent habitable structure involved, the use of which would be continuous, frequent, and routine, I am not convinced that an easement offers the best solution in this case.

This Court's opinion in <u>Manning v. Wingo</u>, 577 So. 2d 865 (Ala. 1991), is instructive. In <u>Manning</u>, the Wingos purchased a parcel of property and made substantial restorations to the house on that property. However, the property was not properly conveyed to the Wingos and was subject to a will contest, meaning that improvements were made to a house for which they did not have good title. Manning, who was awarded the house after the will contest, sued the Wingos to force a sale of the property for a division of the proceeds. The trial court ruled for the Wingos and ordered them to pay Manning for her interest in the property but otherwise allowed them to retain the property and their improvements. This Court reversed the trial court's judgment on other grounds.

Relevant to this case is how this Court approached the issue of the Wingos' improvements on property they did not own. Historically, the common law did not allow one who had made improvements on another's property to recover the value of those improvements. <u>Id.</u> at 868-69 (citing <u>Kerret v. Nicholas</u>, 88 Ala. 346, 6 So. 698 (1889)). After considering how other jurisdictions had fashioned equitable remedies that alleviated the rigidity of the common law, <u>see</u>, e.g., <u>Somerville v. Jacobs</u>, 153 W.Va. 613,

9

170 S.E.2d 805 (1969); <u>Coos Cnty. v. State</u>, 303 Or. 173, 734 P.2d 1348 (1987), this Court acknowledged that the equitable remedies historically available under Alabama common law did not offer a satisfactory outcome in that case. <u>Id.</u> at 869.

Instead, this Court "balanc[ed] the equities involved under these facts" and held that, although they were not the owners of the property and thus traditionally could not recover, the Wingos had the right to recover for the value of the improvements they had made on the property. <u>Id.</u> The Court also recognized that there was an alternative outcome that also achieved equity: the trial court could order Manning to sell the property to the Wingos, minus the value of the improvements. <u>Id.</u> at 870. <u>Manning</u> demonstrates two key facets of equitable remedies under Alabama law: first, there can be multiple, valid equitable solutions in a case and second, achieving a satisfactory equitable remedy may, sometimes, require deviation from a strict rule that does not adequately remedy the situation. Because the purpose of an equitable remedy is to achieve a just outcome, a court can fashion its own remedy, rather than be limited to the requested remedy, when, based on the court's experience and discretion, it finds the requested remedy to be insufficient to balance

10

the equities of the case. See Pinkston v. Hartley, 511 So. 2d 168, 169 (Ala. 1987) (affirming the trial court's granting of an implied easement but also recognizing that the court could have fashioned a different equitable remedy); see also Morrison v. May, 393 So. 3d 450, 460 (Ala. 2023) (Sellers, J., dissenting) (commending the trial court for an appropriate solution in a property dispute).

Here, the trial court was correct in ruling in favor of the plaintiffs. Alabama law recognizes implied easements when an encroachment is "'open and visible, continuous, and reasonably necessary to the estate granted'" and the trier of fact determines the easement is reasonably necessary for the dominant estate. Stringer Realty Co. v. City of Gadsden, 256 Ala. 77, 81, 53 So. 2d 617, 620 (1951) (quoting Birmingham Tr. & Sav. Co. v. Mason, 222 Ala. 38, 40, 130 So. 559, 561 (1930)). However, granting an easement over Haag's property was not the ideal equitable remedy. While an easement gives the plaintiffs the legal right to use the portion of Haag's property that Wilson inadvertently improved, it does not answer deeper, long-term questions. For example, if Haag sells his property, does the buyer take the property subject to the easement? If Wilson sells his house, must the buyer receive Haag's approval to

modify the house because a portion of it is on Haag's property? Who is responsible for the increase in the value of the land and property taxes, the landowner or the homeowner? I am concerned that an easement appears simple and appealing on the surface but ultimately comes short of giving the parties the equity they demand to fully protect, in this case, the value of Wilson's improvements located on an adjoining parcel.

A more ideal solution would have mirrored the trial court's solution in <u>Manning</u>. Under that approach, the trial court would have ordered the plaintiffs to buy the small portion of Haag's property on which the house encroached. This would be the better option; unlike an easement, fee-simple title provides a more permanent solution. Functionally, the easement remedy allows the plaintiffs to use Haag's property as if it were theirs. However, it would have been prudent to go a small step further and give the plaintiffs outright legal ownership to the contested land. This approach would also have given Haag compensation for the land conveyed to the plaintiffs. Even if Haag was at fault for not stopping Wilson from building on his property when he had notice of the encroachment, he should not have to effectively forfeit his property without just compensation. Haag is now forced to directly cede nearly

three quarters of an acre for the plaintiffs' use and likely will suffer diminished hunting value in his surrounding property. This is not a result that balances the equities for both sides.

Another alternative remedy would have been for Haag to purchase Wilson's house, minus the aggregate value of the improvements on the Haag property. Either of these options would have provided for a more permanent remedy that would extend to the future owners of the land and would have given both sides some sort of compensation. Thus, the circuit court had multiple equitable remedies to choose from to provide for a just outcome.

Equity jurisdiction gives broad discretion to trial courts to render an outcome that is consistent with the principles of justice based upon the unique circumstances of each case. See BBC Inv. Co., 280 Ala. at 152, 190 So. 2d at 706 ("The courts of equity under a prayer for general relief have power to mold their decrees to meet the equities developed at the trial."). In doing so, trial courts, based on their experience and expertise, should exercise discretion, which might require them to go beyond the traditional methods of recovery to ensure a just result. See Manning, 577 So. 2d at 869. This Court will not reverse a trial court's judgment

13

providing an equitable remedy unless it violates a principle of justice or misapplies controlling law. <u>Alabama Power Co. v. Drummond</u>, 559 So. 2d 158, 161 (Ala. 1990). Trial courts may also provide remedies that they determine are more appropriate than the requested remedies; Rule 54(c), Ala. R. Civ. P., specifically allows courts to provide remedies to an entitled party, even if those remedies were not specifically requested by the party. <u>See</u> <u>Central Bank of Alabama, N.A. v. Ambrose</u>, 435 So. 2d 1203, 1205-06 (Ala. 1983). Moreover, trial courts may even give a pecuniary, legal remedy if they determine an equitable remedy is unnecessary. <u>See</u> <u>Hood v. Neil</u>, 502 So. 2d 749, 751 (Ala. 1987). Our trial courts have freedom to provide the remedy that they determine is warranted and will adequately balance the equities of the case.

The decision to grant the plaintiffs an easement to use a portion of Haag's property was supported by the evidence and was a valid, legal remedy. <u>Ray v. Robinson</u>, 388 So. 2d 957, 963 (Ala. 1980) (citing <u>Kirby v. Jones</u>, 370 So. 2d 250 (Ala. 1979)). But this case presents an opportunity to consider other remedies in a land dispute to achieve the most just result under the equities of the case. Trial courts must use their prowess

and carefully consider the remedies available under the facts to supply a solution that achieves a just result.