RICHARD L. JONES, Retired Justice.
Did the trial court commit reversible error by instructing the jury that a contract for the sale of real property was, as a matter of law, rendered void by the death of one of the sellers (Dorothy Harris’s husband), thereby precluding the prospective buyers (the Bells) from pursuing their equitable defense — payments made by them under the contract should be treated as rental payments as an offset against their contract obligations?[1] We hold that the court did so err; nonetheless, we affirm, but conditionally.
The essential facts are as follows: In October 1989, Dorothy Harris and her husband Guy Harris contracted with the Bells to sell them a house on the following terms: The Bells were to pay the Harrises $22,400 as a down payment; one principal payment of $2,400 on May 1, 1990; another principal payment of $10,200 on November 1, 1990; and annual installments of $5,000 toward the balance of $40,000, beginning on November 1, 1991.
In addition to making the $22,400 down payment, the Bells timely made the first required payment of $2,400 and took possession of the property. Before the November 1, 1990, payment of $10,200 was due, the Bells determined that they would be unable to make the payment and they so notified the Harrises. Guy Harris agreed to extend the November 1, 1990, deadline, to allow the Bells to find a third party to purchase the property.
Following Guy Harris’s death in August 1990, the Bells found a prospective buyer. On January 9, 1991, Dorothy Harris, the Bells, and Richard D. Henderson (the prospective buyer) executed a real estate sale/purchase agreement. The price was $60,000; of that amount, $1,500 was paid as earnest money, with the balance due in cash on closing; the closing was scheduled for January 31,1991. On the scheduled date for closing, Henderson and his wife were, without dispute, ready, willing, and able to comply with the January 9 sales contract.
The January 9 sales contract, to which Henderson was a party as the prospective purchaser, contains the standard “boilerplate” warranty language, indicating “that [Mrs. Harris] has or will have at the time of closing good and merchantable title to the subject property, that she has a full right to sell and convey the same to Buyer.” A land title company issued its title binder on January 11, 1991, naming, as the “Proposed Insured, Richard D. and Joanne H. Henderson.”
The insurance binder disclosed that, at the time of Guy Harris’s death, title to the subject property was in his name only; consequently, because he had died intestate, his surviving wife shared title to the property with his children from a previous marriage. Mrs. Harris’s stepchildren refused to join with her in conveying the property to the Hendersons; therefore, she could not comply with the terms of the January 9 purchase agreement.
Indeed, after recounting the parties’ receipt of the title binder, Mrs. Harris’s lawyer, in a letter dated February 8,1991, addressed to the Bells’ lawyer, said: “Simply stated, the recent purchase agreement is void due to impossibility and/or mutual mistake of fact.” Consistent with Mrs. Harris’s position throughout this litigation, the February 8 letter further stated:
“Mrs. Harris bent over backward to help [the Bells] by consenting to the ill-fated purchase agreement, which expired January 31, 1991. She honestly thought, and no one knew any better until the title commitment was issued, that she owned the property by virtue of her surviving Mr. Guy Harris. She thought she could convey title by simply signing a deed. As we now know, that is an impossibility. It is that mistake of fact and that impossibility which would preclude any specific perfor- *905 manee or other action brought by Mr. and Mrs. Bell.”
It was Mrs. Harris, and not the Bells, however, who sued. She sought a judgment quieting title and sought damages for breach of contract. A jury awarded her $25,000. The Bells appeal from the judgment based on that verdict.
No lengthy discussion is required to demonstrate the trial court’s error in instructing the juiy that the Henderson contract was void as a matter of law and in submitting Mrs. Harris’s claim for damages to the jury. We must determine whether Mrs. Harris’s legal impediment to conveying title to the Hendersons raised a factual issue as to whether the Bells were obligated to make the $10,200 payment called for under the October 1989 contract of sale.
Mrs. Harris claims that she is not only entitled to void the contract, and thus regain possession of the property, but that she is also entitled to keep all of the payments previously made by the Bells; to collect the $10,200 due on November 1, 1990; and to collect the $25,000 awarded by the jury. To accept Mrs. Harris’s contention is to totally ignore the Henderson transaction. Once they knew they could not make the November 1, 1990, payment of $10,200, the Bells sought and obtained Guy Harris’s permission to seek a third party to buy the property.
After Mr. Harris’s death, Mrs. Harris, along with the Bells and Mr. Henderson, signed the January 9, 1991, sale/purchase agreement. If Mrs. Harris had been legally capable of conveying title to the Hendersons, the Bells would have paid Mrs. Harris the balance due under the original contract of sale and would have made a profit for themselves. Instead, the Bells lost the property, received no credit for the $24,800 already paid under the original contract, and suffered a $25,000 judgment. Mrs. Harris kept the property, kept the Bells’ payments of $24,-800, and obtained a $25,000 judgment in her favor — and all of this because Mrs. Harris was not legally capable of conveying title to the property, according to the Henderson contract of sale — a contract that Mrs. Harris had signed.
Although the gross inequity of the judgment seems to cry out for reversal, we believe, because the Bells had the use of the property for five years, that a conditional affirmance is the appropriate disposition of this appeal. Mrs. Harris testified that the rental value of the property was $500 per month. The Bells’ evidence indicated a rental value of $400 per month. The average of these two rental values is $450 per month. Over a five-year period, at this average rate, the Bells would have owed $27,000 for rent. Their payments totalled $24,800. That amount, taken from the $27,000 rent, would leave a balance of $2,200.
The judgment is affirmed, conditioned on Mrs. Harris’s filing in this Court a remittitur of $22,800 (leaving a judgment of $2,200) not later than 28 days from the date of this opinion; otherwise, the judgment is reversed and the cause is remanded for a new trial.
This opinion was prepared by retired Justice RICHARD L. JONES, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala.Code 1975.
AFFIRMED CONDITIONALLY.
MADDOX, SHORES, KENNEDY, INGRAM, and COOK, JJ., concur.

. No issue is raised by this appeal as to Mrs. Harris’s claim of title to the property. Thus, that portion of the judgment in favor of Mrs. Harris is not affected by this opinion.