YATES, Judge.
David Culbreath sued Edith Parker, seeking to terminate a life estate in certain property. Parker answered and counterclaimed. Following oral proceedings, the court terminated Parker’s life estate in the property and ordered Culbreath to pay $10,000 to Parker for costs of improvements she had made on the property. Culbreath appeals.
When the trial court is presented evidence ore tenus, its findings of fact are presumed correct and its judgment based on those findings will not be reversed unless it is clearly erroneous, manifestly unjust, without supporting evidence, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995).
On August 25, 1988, Culbreath’s father deeded to him two parcels of real property. On January 6, 1990, two deeds were executed, purportedly signed by Culbreath, conveying the parcels back to his father. On January 30, 1990, Culbreath’s father executed a will, devising Parker a life estate in the parcels and the house on one of them. The devise was conditioned on the following: that Parker pay the ad valorem taxes on the property, that she maintain the property in a reasonable condition, that she not remarry, that she not cohabit with another man, and *431 that she not vacate the premises. Cul-breath’s father died on December 7, 1990.
Culbreath testified that he lives in Florida, that he did not sign any deeds conveying the parcels back to his father, and that he was in Florida when the 1990 deeds were signed. He testified that he did not learn of the deeds until 1992, after his attorney discovered them, and that the signatures on the deeds were in his father’s handwriting. Cul-breath stated that he had allowed Parker to live on the property because he was following his father’s wishes and because he thought he was supposed to allow Parker to live there for the rest of her life. He also stated that he had received the tax notices for, and had paid, the 1991, 1992, 1993, 1994, 1995, and 1996 ad valorem taxes on the property. He testified that on three occasions in 1991 he had contacted Parker about her paying the ad valorem taxes and that she had told him that she would get back to him. These were the only conversations that they had concerning the taxes.
Parker testified that she had lived with Culbreath’s father for three years before his death. She testified that she had spoken to Culbreath about the house and that they both believed that she had a life estate in the properties. Parker testified that after her conversation with Culbreath, she sold her house and began making improvements to the house on the Culbreath property, replacing the bathroom plumbing, the bathroom vanity, the water heater, and the stove. She testified that she converted the house from electricity to gas, installed gas heaters, and spent $10,000 to $15,000 improving the house from 1990 until 1997.
On August 31,1994, Culbreath filed a complaint asserting that the 1990 deeds were forgeries and that the property was not part of his father’s estate. Culbreath also asserted that Parker had failed to pay the 1991, 1992, and 1993 ad valorem taxes on the property and that her life estate in the property should be terminated. Parker answered and counterclaimed, asserting claims of fraudulent suppression, fraudulent misrepresentation, and negligence.
Following oral proceedings, the court entered a judgment, holding that the 1990 deeds were null and void because the documents contained the forged signatures of Culbreath, and holding that Culbreath was the true owner of the property. The court ordered Parker to surrender possession of the property. The court also entered a judgment in favor of Parker and against Cul-breath in the amount of $10,000. Culbreath moved to alter, amend, or vacate the $10,000 judgment or, in the alternative, for a new trial, which the court denied. Culbreath appeals, asserting that the court erred in entering the $10,000 judgment in favor of Parker.
Based upon the evidence, it is apparent that the court used its equity power to conclude that Parker was entitled to an equitable hen:
“Alabama has limited its equitable rule of recovery to the following situations: (1) where an improver, acting in good faith and under the mistaken belief that he owns the land, makes improvements on the land of another, being induced to do so by ‘fraud, duress, undue influence, or mistake of such character that he is entitled to restitution,’ Hewett v. McGaster, 272 Ala. 498, 133 So.2d 189 (1961) (citing earlier cases); (2) where the true owner of land makes a demand for the rents and profits, a bona fide occupant under a claim of title who has made valuable improvements on the land is entitled to compensation by way of set-off against the rents or profits accruing during his occupancy, Gresham v. Ware, 79 Ala. 192 (1885); and (3) where a true owner brings an action to recover possession of land, the defendant may recover for permanent improvements by way of set-off against the value of the use and occupation of the land, upon the defendant’s suggestion and proof of adverse possession for three years preceding the complaint, Ala.Code 1975, § 6-6-286.”
Manning v. Wingo, 577 So.2d 865, 869 (Ala.1991).
After thoroughly reviewing the record, we conclude that Parker is not entitled to recover for improvements under any of the three situations described in Manning v. Wingo. However, a court may, based on the circumstances of a case, balance the equities *432 involved under the facts and impose an equitable lien even though the party does not come within any of those three situations. Id.; see Somerville v. Jacobs, 153 W.Va. 613, 170 S.E.2d 805 (1969).
Both parties believed that Parker had a life estate in the property. Culbreath testified that the only time he requested Parker to pay the taxes was in the first year. The tax notices were sent to Florida,' and Cul-breath paid them for three years without further discussion with Parker. During this time, Parker had continued to make improvements. Culbreath waited until 1994 to begin this action; the case was not heard until 1997. In its order the court stated: “This is a classic case of ‘justice delayed is justice denied’; however, all in all, it appears that both parties derived something from the delay.” To declare the life estate a nullity without compensating Parker for the improvements she had made on the property would have unjustly enriched Culbreath.
AFFIRMED.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.