Jerry C. Kellis filed a complaint against the estate of Betty K. Schnatz and Petie J. Schnatz, as executor of Betty Schnatz's estate, requesting enforcement of agreements purporting to convey land to Kellis. The trial court entered a judgment against Kellis in November 2006. Kellis appeals, assigning several grounds for reversing the trial court's judgment.
 Facts
In 1998, Mary J. Kellis and Jerry C. Kellis purchased 1.69 acres of land in Lillian ("the 1998 parcel"), from Betty Schnatz ("Mrs. Schnatz"). The Kellises made a $25,000 down payment for that property; Mrs. Schnatz financed the remaining $75,000, for which the Kellises made monthly payments to her pursuant to a "Vendor's Lien Deed."
On August 10, 2002, Mrs. Schnatz executed a document entitled "Sales Agreement," which purported to convey two and one-half lots ("the subject property") that were adjacent to the 1998 parcel to the Kellises. There was a small house and a mobile home located on the subject property; Mrs. Schnatz lived in the mobile home at the time the sales agreement was executed. The terms of the sales agreement included a purchase price of $50,000, to be paid at the rate of $200 per month at 8% interest; the agreement also retained a life estate for Mrs. Schnatz in the subject property. According to Mr. Kellis, Mrs. Schnatz offered to sell the property for $50,000, and he merely agreed to pay her asking price.
Shortly after the sales agreement had been signed, Mrs. Schnatz, her son, Petie *Page 410 
Schnatz, and her daughter, Betty Morris, discussed the sales agreement with an attorney, who sent a letter on their behalf, dated August 29, 2002, to the Kellises. The letter indicated that Mrs. Schnatz did not recognize the sales agreement as valid.
After Mr. Kellis received the letter, he prepared a second agreement for the sale of the subject property, entitled "Bill of Sale," which also listed a $50,000 purchase price. In addition, the bill of sale gave Mrs. Schnatz a life estate in the subject property, stating that "the seller will pay taxes and insurance with buyers name on the insurance policy," that the "buyer will become responsible for taxes and insurance when he takes possession," and that the "buyer can do some repair work on old house, and use for storage."
The bill of sale was executed in February 2003. Pursuant to the bill of sale, the Kellises made a $2,000 down payment and the monthly payments were raised to $288 per month. Additionally, the Kellises paid $69,000 to Mrs. Schnatz in satisfaction of the mortgage on the 1998 parcel pursuant to the bill of sale.
The bill of sale was signed by Mrs. Schnatz and by Morris. Morris stated, however, that she did not read the document thoroughly before she signed it and that she had signed it because her mother, Mrs. Schnatz, had told her to do so. Additionally, Morris testified that Mrs. Schnatz had already signed the document when she gave it to Morris and that Morris did not see Mrs. Schnatz sign the bill of sale.
The Kellises paid $288 monthly to Mrs. Schnatz beginning in March 2003. Mrs. Kellis testified that Morris was present with Mrs. Schnatz when each payment was made. Mrs. Schnatz continued to live in the mobile home on the subject property until June 2003, when she was no longer able to care for herself. Mrs. Kellis testified that after Mrs. Schnatz moved out of the mobile home, Morris began to give the Kellises the tax bill for the subject property, which they paid. Additionally, after Mrs. Schnatz moved out, Petie Schnatz delivered the key to the mobile home to Mr. Kellis at his mother's request.
According to Petie, he was not aware of the existence of the bill of sale until six months after it was executed. He testified that he did not try to do anything about the bill of sale because Mr. Kellis was paying the taxes as he was required to do pursuant to that agreement. Mrs. Schnatz's grandson, Michael Morris, testified that Mrs. Schnatz was forgetful and had become older and slower by the time she executed the bill of sale. Michael also testified that Mrs. Schnatz told him that she did not want to sell the subject property. Sharon Morris, Michael's wife, testified that she visited Mrs. Schnatz on a regular basis, that she had experience in nursing and working with the elderly, that Mrs. Schnatz's health had begun to deteriorate in approximately 2001, and that she did not believe that Mrs. Schnatz had the capacity to understand the nature of what she was doing in a contract situation after that time. Betty Morris, however, testified that Mrs. Schnatz said that she wanted to sell the subject property. Petie Schnatz testified that although, in his opinion, Mrs. Schnatz was not able to understand the nature and consequences of a contract in February 2003, Mrs. Schnatz knew that the checks that she received from the Kellises were pursuant to an agreement to sell the subject property.
Mr. Kellis made a number of repairs to the small house on the subject property to make it habitable, including adding a tin roof, windows, and fresh paint. After he made those repairs, the Kellises rented the small house for approximately $300 per month. In 2005, however, the house was destroyed by fire. Mr. Kellis collected *Page 411 
approximately $25,000 in insurance proceeds after the fire. The majority of the insurance money was used to remove asbestos from the site of the house. Mr. Kellis also made certain improvements and repairs to the mobile home after Mrs. Schnatz moved out and, at some time, the Kellises rented the mobile home for approximately $600 per month.
Mrs. Schnatz died in February 2006. The Kellises continued to make payments pursuant to the bill of sale. In March 2006, however, the Kellises received a letter from an attorney on behalf of Petie, the executor of Mrs. Schnatz's estate, that stated that he wished to terminate the Kellises' "lease" immediately and that their "failure to pay taxes has constituted breach of this lease." Additionally, the letter advised the Kellises that their "lease" was terminated and that they had 30 days to vacate the subject property. Mr. Kellis testified that he had not been given the tax bill for the subject property for 2005, so he had not yet paid that bill. The Kellises continued to remit payments for the subject property and to pay the taxes on the property after they received the attorney's letter; however, Petie refused the payments, and the Kellises' checks were returned.
 Procedural History
Mr. Kellis ("Kellis") filed a complaint against the estate of Betty K. Schnatz and Petie J. Schnatz, as executor of the estate (hereinafter collectively referred to as "the estate"), on June 22, 2006, seeking a judgment declaring the sales agreement and the bill of sale valid and requesting enforcement of those agreements. The estate filed an answer on August 17, 2006, which included several counterclaims against Kellis. Count I of the estate's counterclaim alleged that Mrs. Schnatz was not competent to execute the "Sales Agreement" or "Bill of Sale" and that those documents were "so vague and ambiguous as to not be enforceable under Alabama law," and the estate requested a rescission of those agreements. The estate also filed counterclaims alleging breach of contract, trespass by Kellis on the subject property, and a claim of ejectment.
On October 23, 2006, the estate filed a motion for a partial summary judgment and a brief in support thereof, asserting that the estate was entitled to a judgment as a matter of law on Count I of the estate's counterclaim. On that same date, the court conducted a bench trial at which ore tenus evidence was presented. The court entered an order on November 1, 2006, which stated:
 "1. The documents purported by plaintiff, Jerry C. Kellis to be `purchase agreements' for real estate signed by Betty K. Schnatz, one recorded September 3, 2002 as instrument no. 679288 dated August 10, 2002, one titled Bill of Sale and one designated `Revised Sale Agreement,' both dated February 12, 2003 (attached hereto) are void.
 "2. The said purported `purchase agreements' did not comply with Alabama law as valid real estate contracts.
 "3. That the decedent, Betty K. Schnatz, did not have sufficient mental capacity to fairly understand the nature and consequences of execution of the document in question and therefore, said document is void and no effect.
 "4. That the plaintiff, Jerry C. Kellis, shall remove himself from the premises which are the subject of this matter within ten (10) days from the date hereof; that no sums are due to plaintiff as he was fully compensated for any improvements to the property by insurance payments and receipt of rents from various tenants on said property during the term of his possession." *Page 412 
Because the trial court's order did not appear to address the estate's counter-claim alleging trespass, this court remanded the cause for adjudication of that counterclaim. On June 14, 2007, the trial court entered an order finding in favor of Kellis on the estate's trespass counterclaim.
 Discussion
This court outlined the appropriate standard of review in cases in which the trial court has heard ore tenus evidence inFarmers Insurance Co. v. Price-Williams Associates,Inc., 873 So.2d 252 (Ala.Civ.App. 2003):
 "`When ore tenus evidence is presented, a presumption of correctness exists as to the trial court's findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala. 1999); Gaston v. Ames, 514 So.2d 877 (Ala. 1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court "will assume that the trial judge made those findings necessary to support the judgment." Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala. 1992). Moreover, "[u]nder the ore tenus rule, the trial court's judgment and all implicit findings necessary to support it carry a presumption of correctness." Transamerica, 608 So.2d at 378. However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court's judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala. 1996); Marvin's, Inc. v. Robertson, 608 So.2d 391 (Ala. 1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala. 1985); League v. McDonald, 355 So.2d 695 (Ala. 1978). "Questions of law are not subject to the ore tenus standard of review." Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala. 2000). A trial court's conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala. 1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379
("[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court's judgment carries no presumption of correctness.").'"
873 So.2d at 254-55 (quoting City of Prattville v.Post, 831 So.2d 622, 627-28 (Ala.Civ.App. 2002)).
Kellis presents four issues on appeal. The first three issues relate to the trial court's determination that Mrs. Schnatz did not have the capacity to understand the nature and consequences of the sales agreement and the bill of sale. Specifically, Kellis argues first that the trial court was not presented with sufficient evidence from which it could conclude that Mrs. Schnatz was habitually insane when she executed the sales agreement and the bill of sale for the subject property. Second, Kellis argues that the trial court erred by failing to make a determination as to whether Mrs. Schnatz was habitually insane or intermittently insane, a distinction that dictates which party had the burden of proof at trial. Third, Kellis argues that the trial court improperly applied Ala. Code 1975, § 8-1-171.
In concluding that the documents at issue in this case were void, the trial court made two alternative findings: 1) that the documents "did not comply with Alabama law as valid real estate contracts" and 2) that Mrs. Schnatz "did not *Page 413 
have sufficient mental capacity to fairly understand the nature and consequences of execution of the document in question." Kellis has challenged the court's second finding that Mrs. Schnatz did not have the capacity to execute those documents, but he has failed to address the first ground — that the documents did not comply with Alabama law. That ground, independent of Mrs. Schnatz's capacity to contract, is sufficient to support the trial court's judgment.
"This court will address on appeal only those issues presented and for which supporting authorities have been cited to the court." Lockett v. A.L. Sandlin Lumber Co.,588 So.2d 889, 890 (Ala.Civ.App. 1991). Because Kellis has failed to present any argument that the trial court erred in finding that the documents violated Alabama law, we are compelled to affirm the judgment. Hence, we need not address Kellis's remaining arguments relating to the trial court's finding that Mrs. Schnatz did not have the capacity to understand the documents.
Kellis's final argument is that the trial court erred by failing to order the estate to repay Kellis the moneys spent by Kellis in reliance on the bill of sale. When a rescission of a contract occurs, as is the effect of the trial court's judgment in the present case, "the proper remedy is to restore all parties to the status quo ante, and each party should be placed in the position that party would have occupied had the conveyance not been made." Clark v. Wilson,380 So.2d 810, 812 (Ala. 1980). In Manning v. Wingo,577 So.2d 865 (Ala. 1991), the Alabama Supreme Court stated:
 "Alabama has limited its equitable rule of recovery to the following situations: (1) where an improver, acting in good faith and under the mistaken belief that he owns the land, makes improvements on the land of another, being induced to do so by `fraud, duress, undue influence, or mistake of such character that he is entitled to restitution,' Hewett v. McGaster, 272 Ala. 498, 133 So.2d 189 (1961) (citing earlier cases); (2) where the true owner of land makes a demand for the rents and profits, a bona fide occupant under a claim of title who has made valuable improvements on the land is entitled to compensation by way of set-off against the rents or profits accruing during his occupancy, Gresham v. Ware, 79 Ala. 192 (1885); and (3) where a true owner brings an action to recover possession of land, the defendant may recover for permanent improvements by way of set-off against the value of the use and occupation of the land, upon the defendant's suggestion and proof of adverse possession for three years preceding the complaint, Ala. Code 1975, § 6-6-286."
577 So.2d at 869. In Culbreath v. Parker,717 So.2d 430 (Ala.Civ.App. 1998), this court stated that "a court may, based on the circumstances of a case, balance the equities involved under the facts and impose an equitable lien even though the party does not come within any of those three situations" outlined in Manning. 717 So.2d at 431-32.
In the present case, there was evidence indicating that, at times, Kellis rented the house and the mobile home on the subject property for $300 and $600 monthly, respectively; however, the record does not reveal the length of time Kellis rented the house and mobile home or the total amount in rent collected by Kellis. It is undisputed that Kellis collected insurance money for damage to the house as a result of a fire, but, according to Kellis, the majority of the proceeds were used to remove asbestos from the property. Additionally, both Kellis and Petie testified that Kellis *Page 414 
made significant improvements to the house and the mobile home on the subject property. Finally, Kellis made a $2,000 down payment for the subject property, submitted monthly payments to Mrs. Schnatz pursuant to the bill of sale, and, at times, payed the property tax for the subject property.
In his brief, Kellis notes that, although the trial court held that Kellis was not entitled to compensation for any improvements he made to the subject property, "the final Order is silent with respect to the substantial consideration paid by Mr. Kellis for the purchase thereof." We conclude that a balance of the equities, as contemplated by Culbreath, is necessary in the present case. The amount expended for improvements to the property by Kellis, the amount of insurance received by Kellis and the amount of the insurance proceeds Kellis retained after necessary cleanup and repairs on the property, the amount of consideration and taxes payed by Kellis for the subject property, and the rental value of the property during Kellis's use thereof should each be considered in balancing the equities in this case. Because the trial court has not balanced the equities, we hereby reverse the portion of the trial court's judgment that relates to compensation to Kellis. We remand this cause for the trial court to weigh each of the factors related to Kellis's expenditures and profits as outlined above and to enter an order consistent with this opinion.
Based on the foregoing, we affirm the trial court's judgment with regard to the trial court's conclusion that the sales agreement and the bill of sale were void. We reverse the portion of the trial court's judgment regarding Kellis's compensation for improvements, and we remand this cause to the trial court to balance the equities and determine whether Kellis is entitled to compensation.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.