MOORE, Judge.
 

 This is the second time these parties have appeared before this court.
 
 See Kellis v. Estate of Schnatz,
 
 983 So.2d 408 (Ala.Civ.App.2007). In
 
 Kellis,
 
 this court affirmed that portion of a judgment entered by the Baldwin Circuit Court (“the trial court”) declaring void a purported real-property sales agreement between Betty K. Schnatz and Jerry C. Kellis (“Kellis”) and his wife, Mary Kellis, 983 So.2d at 412-13; however, the court reversed that portion of the judgment denying Kellis any compensation for improvements made to the real property by Kellis in reliance on the sales agreement. 983 So.2d at 413-14. The court remanded the case to the trial court with instructions to “balance the equities” in accordance with
 
 Culbreath v. Parker,
 
 717 So.2d 430 (Ala.Civ.App.1998), to determine, as a matter of equity, the amount, if any, the estate of Betty Schnatz owed Kellis. 983 So.2d at 414.
 

 On remand, the trial court conducted another hearing. At that hearing, Kellis testified that he had paid approximately $13,500 to Betty Schnatz in monthly payments for the property; that he had paid approximately $130 per year for three years for property taxes; and that he had paid $2,733 for insurance premiums to cover the old house and the mobile home located on the property.
 
 [1]
 
 Kellis further testified that he had spent $5,520 making various improvements to the old house and $170-$175 adding a handicap ramp to the mobile home and $600 repairing the central air-conditioning unit in that mobile home. Kellis also introduced evidence indicating that he had spent $8,200 removing
 
 *679
 
 debris and fallen trees from the property following Hurricane Ivan, which made landfall in Alabama in September 2004.
 

 According to Kellis, a fire caused by lightning on April 6, 2005, totally destroyed the house and damaged the mobile home. Kellis testified that he received $25,000 in insurance proceeds for the damage to the house and that he received $3,700 or $3,800 in insurance proceeds for the damage to the mobile home. Kellis also testified that, following the fire, he had spent $21,500 removing asbestos from the old house and $5,075 repairing and cleaning the mobile home.
 

 Petie Sehnatz, executor of Betty Schnatz’s estate, testified that the house was not habitable at the time of the trial and that the reasonable rental value of the house before Kellis’s improvements was approximately $100 per month. Petie also testified that the reasonable rental value of the mobile home was $600 per month. Kellis testified that he had rented the house to a man named Wayne, who had stayed in the house for four or five months. According to Kellis, Wayne had agreed to pay $300 per month in rent or to perform services for Kellis, including repairs to the house, in lieu of rent. Kellis stated that Wayne had assisted him with repair work and painting and that he did not recall ever having collected any rent from Wayne. Kellis also testified that he had rented the mobile home on two separate occasions, the first time to a couple for four months for $600 a month and the second time for two months for $600 a month. Kellis testified that his mother-in-law moved into the mobile home at some point in 2006 and that she lived there until January 2008, rent free.
 

 Following the hearing, the trial court entered a judgment on February 6, 2008, stating:
 

 “The court having heard the testimony and considered the evidence offered and admitted and having considered and followed the Court of Civil Appeals’ instructions on remand to balance the equities, this court is of the opinion that Jerry C. Kellis is owed no compensation for any improvements made to the property in question or for any other expenditures by Kellis for or about the property. This court has taken into consideration the down payment and monthly payments made by Kellis on the property, the expenditures for improvement to the property, and the evidence presented by Kellis for the cleanup of the property after the hurricane and fire, also any taxes and insurance paid by Kellis. This court has balanced the above with the insurance proceeds received by Kellis, and the amount of rents received by Kellis, and the rental value of the property until January 2008, when Kellis finally moved his mother out of the trailer and off the property.”
 

 Kellis filed his notice of appeal to this court on March 18, 2008. On April 4, 2008, the estate and Petie Sehnatz, as executor of the estate (hereinafter collectively referred to as “the estate”), filed a cross-appeal. This court transferred the appeal and the cross-appeal to the Alabama Supreme Court for lack of subject-matter jurisdiction on September 8, 2008; that court then transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7.
 

 Issues
 

 On appeal, Kellis argues that the trial court erred in several respects, which are more fully explained hereinafter, in determining that he was not entitled to any recovery. In its cross-appeal, the estate argues primarily that the trial court erred
 
 *680
 
 in failing to award it compensation for rent and waste during Kellis’s use of the property.
 

 Standard of Review
 

 We outlined the appropriate standard of review in
 
 Kellis:
 

 “ ‘When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.
 
 J & M Bail Bonding Co. v. Hayes,
 
 748 So.2d 198 (Ala.1999);
 
 Gaston v. Ames,
 
 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court ‘will assume that the trial judge made those findings necessary to support the judgment.’
 
 Transamerica Commercial Fin. Corp. v. AmSouth Bank,
 
 608 So.2d 375, 378 (Ala.1992). Moreover, ‘[ujnder the
 
 ore tenus
 
 rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.’
 
 Transamerica,
 
 608 So.2d at 378. However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court’s judgment.
 
 Allstate Ins. Co. v. Skelton,
 
 675 So.2d 377 (Ala.1996);
 
 Marvin’s, Inc. v. Robertson,
 
 608 So.2d 391 (Ala.1992);
 
 Gaston,
 
 514 So.2d at 878;
 
 Smith v. Style Advertising, Inc.,
 
 470 So.2d 1194 (Ala.1985);
 
 League v. McDonald,
 
 355 So.2d 695 (Ala.1978). ‘Questions of law are not subject to the
 
 ore
 
 tenus standard of review.’
 
 Reed v. Board of Trustees for Alabama State Univ.,
 
 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal.
 
 Ex parte Cash,
 
 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo.
 
 Allstate,
 
 675 So.2d at 379 (‘[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.’).” ’
 

 “[Farmers Insurance Co. v. Price-Williams Assocs., Inc.,]
 
 873 So.2d [252] at 254-55 [ (Ala.Civ.App.2003) ] (quoting
 
 City of Prattville v. Post, 831
 
 So.2d 622, 627-28 (Ala.Civ.App.2002)).”
 

 983 So.2d at 412.
 

 Discussion
 

 As noted above, in
 
 Kellis,
 
 this court affirmed that portion of the trial court’s judgment rescinding the sales agreement between Betty Schnatz and the Kellises. In cases in which an agreement regarding the transfer of real property is rescinded, equity requires that the parties thereto be returned to the
 
 status quo ante,
 
 as if the agreement had not existed.
 
 See Clark v. Wilson,
 
 380 So.2d 810, 812 (Ala.1980). Normally, upon rescission of the agreement, the vendor must tender to the purchaser the amount given in consideration.
 
 Craig v. Craig,
 
 372 So.2d 16, 21 (Ala.1979). However, reimbursement is ordinarily offset by the value of the use of the land that the purchaser enjoyed before the rescission of the agreement.
 
 Id.
 

 As his first point of error, Kellis argues that the value of his use of the property should be measured by the actual rents he received and not by the reasonable rental value of the property. Kellis points out that in
 
 Kellis,
 
 this court mentioned that it could not determine the
 
 *681
 
 amount of the rent Kellis had actually received. 983 So.2d at 413. From that statement, Kellis contends that this court must have intended for the trial court, on remand, to determine that amount and use that amount in calculating any offset against the consideration paid. However, Kellis overlooks our specific remand instructions to the trial court, in which the court stated:
 

 “We conclude that a balance of the equities, as contemplated by
 
 Culbreath [v. Parker,
 
 717 So.2d 430 (Ala.Civ.App.1998) ], is necessary in the present case. The amount expended for improvements to the property by Kellis, the amount of insurance received by Kellis and the amount of the insurance proceeds Kellis retained after necessary cleanup and repairs on the property, the amount of consideration and taxes payed by Kellis for the subject property, and
 
 the rental value of the property during Kellis’s use thereof
 
 should each be considered in balancing the equities in this case.”
 

 983 So.2d at 414. Those instructions indicate that the trial court was to use the rental
 
 value
 
 of the property during Kellis’s use and not the actual rents received by Kellis in determining the offset. Moreover, that reading is consistent with other Alabama cases requiring a party returning property following a voided transaction to pay the reasonable rental value for his or her use and occupancy of the land.
 
 See, e.g., Griffin v. Griffin,
 
 206 Ala. 489, 90 So. 907 (1921); and
 
 Bell v. Harris,
 
 664 So.2d 903 (Ala.1995). Hence, we reject Kellis’s argument that the trial court should have used the actual rents received and not the reasonable rental value of the property in determining the offset.
 

 Kellis next argues that the trial court erred in concluding that Kellis owed rent to the estate up to the date his mother-in-law vacated the mobile home. As noted earlier, Alabama law provides that the reasonable rental value of the property is payable for the purchaser’s use and occupancy of the land up to the time of the date of the rescission of the sales agreement.
 
 Craig, supra.
 
 In this case, the trial court rescinded the sales agreement on November 1, 2006; however, Kellis’s mother-in-law did not vacate the mobile home until January 2008. Kellis argues that because the trial court denied his motion to set the amount of a supersedeas bond to stay enforcement of the judgment, it would be unfair to charge him rent for the use of the land following the entry of the November 1, 2006, judgment. Putting aside the fact that Kellis could have petitioned this court to approve the supersede-as bond following the trial court’s denial of his motion,
 
 see
 
 Rule 8(b), Ala. R.App. P., we note that Kellis did not present to the trial court any argument that it had erroneously extended the rental period beyond the date of the November 1, 2006, judgment. This court will not consider arguments raised for the first time on appeal.
 
 T.J.H. v. S.N.F.,
 
 960 So.2d 669, 673 (Ala.Civ.App.2006).
 

 Undisputed evidence, consisting of the testimony of Petie Schnatz, establishes that, on the date Kellis took possession of the property,
 
 see Ex parte Meadows,
 
 598 So.2d 908, 912 (Ala.1992) (holding that reasonable rental value should be computed based on such value at the time purchaser obtained possession), the property had a reasonable rental value of $700 per month. The evidence establishes that Kellis entered the property and began repairing the old house some time after the execution of the February 2003 sales agreement but before June 2003; however, Kellis testified that he only commenced those repairs with Betty Schnatz’s permission. Kellis assumed unrestricted use and occupancy of the land in June 2003 when Betty Schnatz vacated the property and gave
 
 *682
 
 Kellis the keys to the mobile home. Using June 2003 as the starting date and January 2008 as the ending date, Kellis used and occupied the land exclusively for a total of 55 months. Thus, the reasonable rental value during Kellis’s possession would be $38,500.
 

 Kellis testified that he had paid Schnatz $13,500 plus three years of property taxes at $130 per year. The total consideration paid by Kellis amounts to $13,890. Subtracting the reasonable rental value from the consideration paid by Kellis yields a balance of $24,610 in favor of the estate.
 

 When balancing the equities following rescission of a real-property sales agreement, the purchaser is entitled to the present value of improvements made to the property at the time of the trial.
 
 Griffin, supra;
 
 and
 
 Culbreath, supra. See also Manning v. Wingo,
 
 577 So.2d 865 (Ala.1991). The vendor would be unjustly enriched if allowed to retain the value of improvements made to the property by the purchaser.
 
 Culbreath,
 
 717 So.2d at 432. In accord with this view, the purchaser would be entitled to recover only to the extent of the enhanced value of the property attributable to permanent improvements made by the purchaser.
 
 Cf. Penny v. Penny,
 
 247 Ala. 434, 437, 24 So.2d 912, 915 (1946) (cotenant held to be entitled to “reasonable value of permanent improvements erected on the land ... to the extent of the proportionate enhancement in the market value of the whole property”); and
 
 McDaniel v. Louisville & Nashville R.R.,
 
 155 Ala. 553, 46 So. 981 (1908) (bona fide purchaser, who made permanent improvements that enhanced the value of the property, was entitled to receive in a sale for division in equity the value of the lands as enhanced, over and above his pro rata share of the lands without the improvements).
 

 In this case, the only permanent improvements Kellis made to the property consisted of his addition of the ramp onto the mobile home, the repair of the central air-conditioning unit in the mobile home, and his removal of the fallen trees and other debris following Hurricane Ivan. Kellis claims he is entitled to compensation for the improvements made to the old house, but it is uncontradicted that those improvements were destroyed in the 2005 fire and were no longer present on the property at the time of the trial.
 
 [2]
 
 Hence, those improvements cannot be considered to have enriched the estate such that Kel-lis would be entitled to compensation for their present value.
 

 As to the value of the improvements, Kellis testified that he spent $775 in improving the mobile home and $8,500 remediating the hurricane damage.
 
 [3]
 
 However, as we have noted, the measure of compensation is the extent to which the value of the property has been enhanced. The record is silent in that regard. Even assuming that the property value increased exactly in the amounts Kellis spent, that amount, $9,275, would only re
 
 *683
 
 duce the balance in favor of the estate to $15,335.
 

 Kellis last argues that he should have received credit for the insurance premiums he paid. Kellis points out that he spent $2,733 to insure the old house and the mobile home during his use and occupancy. Kellis received $28,700 to $28,800 in insurance proceeds following the 2005 fire, out of which he spent $26,575 removing asbestos from the old house and repairing and cleaning the mobile home. Kellis acknowledges that he received more in insurance benefits than he spent in making repairs, an amount between $2,125 and $2,225, but he maintains that the estate should still have to compensate him for the insurance premiums. We need not address this issue, however, because even if Kellis could recover the insurance premiums, under our directions to the trial court to “balance the equities,” that amount would be completely offset by the balance in favor of estate set out above.
 

 After a thorough consideration of the points Kellis raises in his appellate brief, we are convinced that the trial court did not commit reversible error in determining as a matter of equity that Kellis could not recover from the estate any compensation for the amounts expended by him in reliance on the voided sales agreement. We therefore conclude that the trial court could have reasonably determined that the amounts owing to the estate for rent completely offset the value of the improvements and consideration paid by Kellis.
 

 In its cross-appeal, the estate argues that the trial court erred in failing to award it damages. The estate points out that, after offsetting the value of improvements made by Kellis and the money paid by Kellis in consideration for the purchase of the property, Kellis still owes the estate rent for his use and occupancy of the property. The estate further maintains that Kellis should be held accountable for the loss of the old house. Whatever the merits of the estate’s claims against Kellis, we conclude that those claims have been waived. In
 
 Kellis,
 
 the estate filed a complaint against Kellis seeking, among other things, damages for his use of the property. In its final judgment, the trial court did not award either party any damages. Kellis appealed that judgment, but the estate did not. Hence, the estate waived any objection to the trial court’s failure to compensate it for the alleged waste committed by Kellis and for the rents due from Kellis.
 
 See J.K.L.B. Farms, LLC v. Phillips,
 
 975 So.2d 1001, 1010 (Ala.Civ.App.2007). Contrary to the estate’s argument, by remanding the case to the trial court to “balance the equities” to determine the compensation Kellis may have been owed from the estate,
 
 see
 
 983 So.2d at 414, this court did not revive the estate’s claims against Kellis and authorize the trial court to award the estate any compensation.
 

 Based on the foregoing, we affirm the trial court’s judgment.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . Kellis testified that he had paid $310 in annual insurance premiums for the house on the property for three years and that he had paid annual premiums of $601 for insurance on the mobile home for three and one-half years. However, in his brief on appeal, Kellis estimated his insurance payments for the mobile home to be $1,803, which equates to only three years of payments at $601 per year.
 

 [2]
 

 . Kellis does not argue that the repairs to the mobile home and the removal of the asbestos from the old house following the 2005 fire constituted permanent improvements.
 

 [3]
 

 . In its cross-appeal, the estate argues that the trial court erred in admitting documents supporting Kellis's testimony regarding the amounts he spent on the property. We do not necessarily agree that the trial court erred in admitting those documents, but we note that, even if the trial court had committed error, that error is not reversible error because the documents are merely cumulative of Kellis’s testimony, to which no objection was raised, so any error would be harmless.
 
 See T.C. v. Cullman County Dep't of Human Res.,
 
 899 So.2d 281, 289 (Ala.Civ.App.2004).