THOMAS, Judge.
Nathaniel Bradley appeals from a judgment of the Escambia Circuit Court in favor of Matthew Bauldree.

Facts

At some time in late 2005 or early 2006, the parties entered into an agreement in which Bradley agreed to sell Bauldree and his wife, Christie Bauldree, two acres of land (“the property”) in Escambia County for $15,000. On March 5, 2006, Bauldree tendered $3,000 to Bradley as a down payment for the property. Upon receipt of the $3,000, the parties executed a handwritten receipt that read:
“3/5/06
Received from Matt Bauldree 3,000. cash down payment on 2 acres of land.
Nathaniel Bradley
s/ Nathaniel Bradley
s/ Matthew Bauldree
Matthew Bauldree
Balance due 12,000.”
The parties did not execute any other writing memorializing the agreement for the sale and purchase of the property.[1]
Although it is not clear from the record exactly when the Bauldrees took possession of the property, it is undisputed that they began clearing the property and making other improvements to the property. In June 2006 and July 2006, the Bauldrees paid for the installation of a sewage system, which included a percolation test, installation of field lines, and obtaining a permit from the Department of Public Health. In addition, the Bauldrees installed a utility pole for electricity, repaired the water well, and paid the 2006 property taxes. At some point the Bauldrees moved first a camper, and later a manufactured home, onto the property. Bauldree averred in his complaint that he and his family resided on the property from October 2006 to June 2007.
The Bauldrees applied for a loan with Bank Trust (“the bank”) in order to procure the remaining $12,000 due Bradley for the property. Per bank policy, the bank requested a title search for the property. The Bauldrees paid to have the title search completed. On April 18, 2007, a title opinion was rendered, stating in pertinent part:
“3. Parcel Two [the property] may be subject to judgment dated July 3, 1996, in favor of Progressive Insurance Company as Subrogee of and against Theresa Michelle Davis, which judgment was filed for record August 3, 1998, in OR Book 175 at pages 301-302 of the Probate Office of Escambia County, Alabama .... That Theresa S. Davis had an interest in the property until August 10, 2001.”
(Emphasis added.) Because of the potential encumbrance, the bank did not approve the loan.
*224 At trial, the Bauldrees testified that they had asked Bradley to remove the potential encumbrance but that he had refused. The Bauldrees vacated the property in June 2007.[2] Bradley, appearing pro se, testified that he did not feel that it was his responsibility to clear the potential encumbrance because, he further testified, he knew that there was not an encumbrance associated with the property. Bradley also produced at trial an affidavit by Teressa Amanda Spence Davis, Bradley’s predecessor in interest, which was recorded with the Escambia County probate office, stating that she was not the Theresa Michelle Davis who was referenced in the title opinion.

Procedural History

On August 25, 2008, Bauldree filed a complaint with the trial court alleging breach of contract and fraudulent misrepresentation and requesting compensatory and punitive damages. Bradley did not answer the complaint, and the circuit clerk entered a default against him on April 28, 2009. Bradley filed a motion to set aside the default on June 3, 2009, which the trial court granted on July 21, 2009.[3] Bradley filed an answer on July 23, 2009, denying the allegations set forth in the complaint and asserting a counterclaim for either the remaining balance of the purchase price in the amount of $12,000 or, alternatively, to be released from the agreement and to be awarded the improvements to the property as rent for the time the Bauldrees had use and occupancy of the property.[4],[5]
A bench trial was held on April 19, 2010, at which the trial court heard ore tenus evidence. On September 3, 2010, the trial court entered a judgment finding that Bradley had breached the contract. The trial court awarded Bauldree the following monetary damages:
Down Payment $3,000.00
Septic System 1,749.20
Utility Pole 300.00
2006 Taxes 65.56
Engineering 290.00
Title Search 400.00
Repair Water Well 400.00
Total $6,204.76
The trial court also awarded Bauldree $5,000 in attorney fees, plus court costs of $621. In addition, the trial court awarded Bauldree possession of the property and an equitable lien in the amount of $11,825.76 on the property pending the transfer of ownership. The trial court did, however, grant Bradley the right to redeem the property by paying Bauldree *225 $11,825.76 within 42 days of entry of the judgment. Upon such payment, Bradley would then have exclusive use, possession, and ownership of the property. By entering a judgment in favor of Bauldree for the damages he requested, the trial court implicitly denied Bradley relief under his counterclaim. See Housing Auth. of Chickasaw v. CBE, Inc., 656 So.2d 1219, 1221 (Ala.Civ.App.1995) (citing Hingle v. Gann, 368 So.2d 22 (Ala.1979)) (“[Wjhere a judgment is rendered for one party for the total amount claimed and the judgment is silent as to the counterclaim of the other party, then the judgment will be deemed final.”).
Bradley filed a motion for a new trial supported by exhibits and an affidavit on September 28, 2010. The trial court entered an order on December 28, 2010, granting a new trial as to the amount of damages.[6] On October 6, 2011, the trial court entered an amended judgment awarding Bauldree the same categories of monetary damages totaling $6,204.76, $621 in court costs, and a lien in the amount of $6,825.76 against the property. The amended judgment did not award Baul-dree attorney fees or possession of the property. Bradley appealed to our supreme court on November 14, 2011. The supreme court then transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.

Standard, of Review

“ ‘ “When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Gaston v. Ames, 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court ‘will assume that the trial judge made those findings necessary to support the judgment.’ Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala.1992). Moreover, ‘[ujnder the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.’ Transamerica, 608 So.2d at 378. However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court’s judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala.1996); Marvin’s, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978). ‘Questions of law are not subject to the ore tenus standard of review.’ Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 (‘[Wjhere the facts before the trial court are essentially undisputed and the contro *226 versy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.’).” ’
“[Farmers Insurance Co. v. Price-Williams Assocs., Inc.,] 873 So.2d [252,] 254-55 [ (Ala.Civ.App.2003) ] (quoting City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002)).”
Kellis v. Estate of Schnatz, 983 So.2d 408, 412 (Ala.Civ.App.2007).

Discussion

Bradley presents four issues on appeal. Two of the issues concern whether the alleged lien against the property was or even could have been considered valid; we need not decide those issues to resolve this appeal. Thus, we will address only Bradley’s arguments that the trial court erred by imposing a warranty of title and a financing contingency on the parties’ agreement and that the trial court erred in denying Bradley relief under his counterclaim.
We first address whether the parties were bound by a valid contract. Testimony from all the witnesses at trial indicated that the transaction began with an oral agreement, in violation of the Statute of Frauds. “Oral promises for the sale of 'lands, tenements or hereditaments, or of any interest therein,’ such as the one here, are inherently suspect, and the Statute of Frauds prohibits the enforcement of such a promise even though both parties acknowledge the existence of the oral agreement.” Rentz v. Grant, 934 So.2d 368, 373 (Ala.2006)(quoting Darby v. Johnson, 477 So.2d 322, 326-27 (Ala.1985)).
Section 8-9-2(5), Ala.Code 1975, the Statute of Frauds, provides, in pertinent part:
“In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
[[Image here]]
“(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller.”
The oral agreement was memorialized on March 5, 2006, by the receipt included in the record and quoted above. The receipt contained the signatures of both parties and the purchase price. Although the receipt merely described the property as “two acres,” this lack of specificity is not fatal. See Nix v. Wick, 66 So.3d 209, 213 (Ala.2010) (quoting Goodwyn v. Jones, 288 Ala. 71, 75, 257 So.2d 320, 323 (1971)) (“ ‘that a contract for sale of land, to satisfy the statute of frauds, must describe the land with such certainty that it can be identified without resort to oral evidence’ ”), contra Rentz, 934 So.2d at 373 (stating that the “partial performance” exception to the Statute of Frauds will save an oral agreement when the purchaser has paid all or part of the purchase price and has been put in possession of the land by the seller). Because Bauldree tendered the $3,000 down payment and took possession of the property, the partial-performance exception to the Statute of Frauds applies. Therefore, we hold that a valid contract existed between the parties for the sale and purchase of the property.
In his amended complaint, Bauldree asserted that Bradley had breached the agreement by failing to free the property from encumbrances and, also, *227 by representing that title to the property was free and clear of all encumbrances and impediments. The trial court found that Bradley had breached the contract. We disagree. First, the terms contained in the contract (i.e., the receipt) make no reference to a warranty of title. Furthermore, the contract is devoid of language indicating that Bradley would assist Baul-dree in obtaining financing, or any other reference to a financing contingency.
“In a suit upon a contract for damages for its breach, there can be no recovery except in pursuance of its terms. Thomas v. Smoot, 2 Ala.App. 407, 56 So. 1 [ (1911) ]. Where none of the terms of the contract sued upon are given, manifestly no recovery could be had.”
Spann v. Radford, 22 Ala.App. 402, 403, 116 So. 311, 312 (1928).
We next note that it is clear from the record that the judgment referenced in the title opinion was never attached to the property. Due to the similarity between the names of Bradley’s predecessor in interest and the individual against whom the judgment was rendered, the title opinion suggested the possibility that the property might be subject to a judgment. However, it is unreasonable to hold Bradley, or any other grantor, responsible for a potential encumbrance that was never affiliated with the property. Furthermore, Bradley testified at trial that he was still willing to complete the contract. Specifically, he testified that he would convey the property in return for the agreed upon $12,000 balance. In other words, Bradley was ready, willing, and able to perform his part of the contract.[7] Therefore, we conclude that the trial court’s judgment holding that Bradley was in breach of contract is due to be reversed.
Because we have determined that Bradley did not breach the contract, we must now consider whether the trial court’s implicit denial of Bradley’s counterclaim was also error. We note that Bradley requested specific performance of the contract or, in the alternative, that the trial court award him the improvements to the property as rent for the time the Baul-drees had use and occupancy of the property. Bradley argues generally that the undisputed evidence demonstrated that it was Bauldree who breached the contract by not paying the remainder of the purchase price due under the contract. Thus, Bradley argues, the trial court erred by not entering judgment in his favor on his counterclaim and ordering Bauldree to pay the $12,000 due under the contract.
We agree that the evidence at trial indicates that Bauldree breached the contract to purchase the property. Because the undisputed evidence supports that legal conclusion, we reverse the trial court’s judgment implicitly denying Bradley relief on his counterclaim. However, because “[t]he decision to grant specific performance rests largely in the discretion of the trial judge” and “whether relief shall be granted depends upon an equitable consideration of the particular circumstances of each case,” Stringfellow Materials, Inc. v. Lee, 438 So.2d 1387, 1390 (Ala.1983), we cannot order a particular result on remand. Instead, on remand, the trial court may consider whether specific performance is the appropriate remedy under the facts and circumstances of this case.

*228
Conclusion

We reverse the trial court’s judgment holding that Bradley breached the contract. We remand this cause for the trial court to reconsider Bradley’s counterclaim seeking specific performance.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ„ concur.

. Testimony indicates that the parties originally entered into an oral agreement for the sale and purchase of the property.

. Christie Bauldree testified that she spoke to a representative from Progressive Insurance Company, the holder of the judgment. She further testified that that conversation led her to believe that the property was soon to be in foreclosure and that they would lose their manufactured home as well as the property. However, the property was never in danger of foreclosure. The Bauldrees have since purchased another house.

. Although the circuit clerk entered a default against Bradley on April 28, 2009, a default judgment was never entered. Therefore, the trial court was free to grant relief even though the motion to set aside the default was made more than 30 days after the entry of default. See McConico v. Correctional Med. Servs., Inc., 41 So.3d 8, 12 (Ala.Civ.App.2009) ("In fact, because an entry of default is no more than an interlocutory order, it is not a final judgment, and relief from such an order is available under Rule 55(c) regardless of when the request is made. Ex parte Family Dollar Stores of Alabama, 906 So.2d [892,] 897 [ (Ala.Civ.App.2009) ])."

. Bradley had the assistance of legal counsel for the motion to set aside the default and for the answer and counterclaim. His counsel then withdrew. Bradley proceeded pro se at trial.

. Bauldree filed an amended complaint asserting the same claims and requests for damages. The new complaint omitted the erroneous assertion that the property was allowed to go into foreclosure.

. A trial court is required to render an order disposing of a pending postjudgment motion within 90 days. Rule 59.1, Ala. R. Civ. P. However, the 90th day in the case fell on December 27, 2010, which was a Sunday. Therefore, pursuant to Rule 6(a), Ala. R. Civ. P., the period ran until the next day, December 28, 2010. See Williamson v. Fourth Ave. Supermarket, Inc., 12 So.3d 1200, 1203-04 (Ala.2009).

. We also note that Bauldree has yet to pay the remaining $12,000. Bradley, on the other hand, proceeded to concede possession of the property to Bauldree, allowing Bauldree and his family to clear the property, move a manufactured home onto the property, and reside on the property for several months. It is also undisputed that the Bauldrees vacated the property on their own volition, not at the request of Bradley.